**Willie SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–00–01356–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 9, 2001.

Rehearing Overruled Sept. 20, 2001.

Lane D. Thilbodeaux, Bryan, for appellants.

Laura Lyn Wood Cass, Bryan, for appellees.

Panel consists of Justices YATES, ANDERSON, and SEYMORE.

## OPINION

YATES, Justice.

A jury convicted appellant, Willie Smith, of possession of a controlled substance with intent to deliver and sentenced him to 50 years in the Texas Department of Criminal Justice, Institutional Division. Finding the State failed to demonstrate the police had reasonable suspicion for the stop which led to the discovery of the controlled substance, we reverse and remand.

## I. Background

On April 10, 2000, Wayland Rawls of the Brazos Valley Narcotics Trafficking Task Force ("the Task Force") relayed information to Brian Bachmann, also with the Task Force, about a call Rawls received from Beverly Garrick, a person from whom the Task Force had received information in the past.[1] Rawls told Bachmann that appellant would have heroin in his vehicle as he drove northbound on Highway 6 sometime between 6:00 and 8:00 p.m. Rawls generally described appellant's vehicle as a tan Lincoln with a black roof, gave its license plate number, and further told Bachmann that appellant would have two passengers with him, including Garrick.

Bachmann and Rawls, as well as other members of the Task Force, established surveillance on Highway 6. Shortly after 6:00 p.m., Rawls contacted Bachmann via police radio and advised that a car matching the description of appellant's was heading northbound on Highway 6. Bachmann, whose patrol car was facing southbound off a northbound exit ramp, pulled in behind appellant's vehicle and, confirming the vehicle was registered to appellant and carrying two other passengers, activated his overhead lights and quickly pulled over appellant. Bachmann testified he activated his lights almost immediately and stopped appellant before appellant reached the next exit, a distance of less than two miles from the point Bachmann first spotted appellant's vehicle.[2] Bachmann eventually obtained appellant's consent to search the vehicle. The search led to the discovery of 4.65 ounces of heroin in 48 individually wrapped packages.

■ This case turns on whether police had reasonable suspicion to initially stop appellant. Appellant filed a pre-trial motion to suppress, arguing Bachmann lacked reasonable suspicion to conduct the investigatory stop. At the conclusion of the hearing, appellant's attorney asked the trial court to forestall ruling while he researched a recent Supreme Court opinion. The court obliged, but thereafter the record does not reflect whether appellant ever sought or secured a ruling on his motion. Accordingly, his point of error as to the *pre-trial* motion to suppress is waived, and we now consider his second point of error, where appellant re-urged his motion to suppress during trial.

---

1. Garrick's status as the informant was revealed at trial.

2. Bachmann testified that, at the time he stopped appellant, he told appellant that he was being stopped for a minor traffic violation. He further testified that he frequently tells suspects they are being stopped for something else for his own safety, as well as for the safety of any informants or undercover officers that may be in the suspect's vehicle. The State argued at trial and on appeal that the traffic offense was not the basis of the stop. Accordingly, we need not address whether this was a valid pretext stop. *See, e.g., Garcia v. State,* 827 S.W.2d 937, 944 (Tex.Crim.App. 1992).

## II. Standard of Review

A ruling on a motion to suppress will not be reversed unless the trial court abused its discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). Our review affords almost total deference to the trial court's determination of historical facts, as that often involves a judge's evaluation of the credibility and demeanor of the witnesses who testify. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997) (citing *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)); *see also Durrett v. State*, 36 S.W.3d 205, 208–09 (Tex.App.—Houston [14th Dist.] 2001, no pet. h.). Where, as here, the trial court made no explicit findings of historical fact, we presume it made those findings necessary to support its ruling, provided they find support in the record. *See Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim.App.2000). Likewise, we view evidence in the light most favorable to the trial court's ruling on mixed questions of law and fact. *See Guzman*, 955 S.W.2d at 89.

A trial court's determination on a pure question of law-whether the officer had reasonable suspicion—is reviewed *de novo*, as "the legal rules for ... reasonable suspicion acquire content only through application. *Independent review* is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles." *Guzman*, 955 S.W.2d at 87 (emphasis added) (citing *Ornelas v. United States*, 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)); *see also Simpson v. State*, 29 S.W.3d 324, 327 (Tex.App.— Houston [14th Dist.] 2000, pet. ref'd). Because the relevant facts in this case do not turn on the credibility or evaluation of any witness, we apply the *de novo* standard of review. *See Guevara v. State*, 6 S.W.3d 759, 763 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd).

## III. Reasonable Suspicion

A "stop and frisk" by law enforcement personnel amounts to a sufficient intrusion upon an individual's privacy rights to implicate Fourth Amendment protections. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under an exception to the warrant requirement, however, an officer is generally justified in briefly detaining an individual with less than probable cause for the purposes of investigating possibly criminal behavior if the officer can "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* at 21, 88 S.Ct. 1868; *see also Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997) (stating "Texas courts require reasonable suspicion before a seizure of the person or property can occur."). We apply an objective standard to determine the existence of reasonable suspicion, *i.e.*, would the facts available to the officer at the moment of seizure or search justify a man of reasonable caution in the belief that the action taken was appropriate? *Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868.

Reasonable suspicion is based on the totality of the circumstances and is dependent upon both the content of the information possessed by the police and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Guevara*, 6 S.W.3d at 763. In examining the totality of the circumstances, the quantity and quality of the information available to the police officer is considered. *White*, 496 U.S. at 330, 110 S.Ct. 2412; *Guevara*, 6 S.W.3d at 763. If factors are present which compensate for weaknesses in other areas, there may be sufficient probable cause despite the weaknesses. *Rojas v. State*, 797 S.W.2d 41, 43 (Tex.Crim.App.1990). The same rule ap-

plies to an investigatory detention, *i.e.*, a weakness in one area may be overcome by strengths in others.[3] Although the determination of whether an intrusion into one's privacy is justified is a case-by-case inquiry, at bottom, a valid detention rests upon a finding that the detention was reasonable in light of the attendant circumstances. Whether a detention was reasonable under the circumstances turns upon the reliability of the information possessed by the police, regardless of its origin, *i.e.*, whether the information was observed first hand[4] or obtained from a confidential informant,[5] an anonymous tipster,[6] or a concerned citizen reporting a possible crime in progress or of recent origin.[7]

In situations involving the police's use of an informant, we consider the informant's reliability in analyzing the totality of the circumstances. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (stating that "the totality of the circumstances-the whole picture-must be taken into account."); *see also Woods v. State,* 956 S.W.2d 33, 38 (Tex. Crim.App.1997). We also consider as part of the totality of the circumstances whether an informant's tip contains a range of details relating not only to easily obtained facts and conditions existing at the time of the tip, but also to future actions of third parties ordinarily not easily predicted. *Gates,* 462 U.S. at 241–46, 103 S.Ct. 2317.

3. For instance, cases analyzing informants of proven reliability, as in *Carmouche,* often find reasonable suspicion even though there is very little detail or "predictions" about future behavior provided. Conversely, anonymous tips, as in *Gates,* require a great deal of detail about future movements of the suspect. As the Supreme Court said:

> Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response.

*Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

4. *See, e.g., Terry,* 392 U.S. at 6, 88 S.Ct. 1868 (establishing reasonable suspicion standard on observations of police officer which led him to believe two individuals were about to commit robbery, where each suspect made five or six alternating trips past a particular store, each time peering inside its window then walking beyond store a few more paces, before turning around to join other suspect).

5. *See, e.g., Carmouche,* 10 S.W.3d at 328 (concluding warrantless stop justified based upon informant's tip that appellant was transporting cocaine, her previous history of providing reliable information to authorities, and events at gas station which served to corroborate her information).

6. *See, e.g., Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (finding anonymous tipster's detailed information, which included unusual method of travel between cities, coupled with independent police corroboration, sufficiently reliable to warrant intrusion); *Knight v. State,* 814 S.W.2d 545, 546 (Tex.App.—Houston [1st Dist.] 1991, no pet.) (finding anonymous tip sufficiently corroborated where two police officers received tips from different persons and each corroborated the information he received, including verifying suspect was arrested three times before for "dangerous drugs" and observing "several males go into the apartment and stay a short period of time and leave the location.").

7. *See, e.g., State v. Sailo,* 910 S.W.2d 184, 188 (Tex.App.—Fort Worth 1995, pet. ref'd) (finding reasonable suspicion where officer received face-to-face communication from concerned citizen about a possible DWI suspect just moments before defendant's car passed officer).

The fact that Bachmann spotted a vehicle traveling along Highway 6 between 6:00 P.M. and 8:00 P.M. is an example of the former. *Cf. White,* 496 U.S. at 332, 110 S.Ct. 2412 (1990) (classifying fact that officers found car precisely matching caller's description in front of certain building as easily obtainable fact). A tip can prompt a police investigation which develops the necessary facts as exemplified in *Gates:* "If you watch them carefully you will make a big catch." 462 U.S. at 225, 103 S.Ct. 2317. An officer corroborates the totality of the circumstances by confirming enough facts so that he may reasonably conclude that the information provided to him is reliable and the temporary detention is justified. *See White,* 496 U.S. at 330–31, 110 S.Ct. 2412.

■■■■ The State cast Garrick as a confidential information. A confidential informant can provide the requisite reasonable suspicion to justify an investigative detention so long as additional facts are present to demonstrate the informant's reliability. *Adams,* 407 U.S. at 144–47, 92 S.Ct. 1921 (finding sufficient indicia of reliability where informant was personally known to officer, informant provided officer with information previously, and informant was subject to arrest for making a false complaint had the officer's investigation proved the tip false); *see also Sailo,* 910 S.W.2d at 189–90 (citing *Gates* and stating that where information has low degree of reliability, more is required to justify an investigative detention, and that, under totality of circumstances, "informant's veracity, reliability, and basis of knowledge are highly relevant."). The record in this case is devoid of any evidence about these three "highly relevant" factors. For instance, notwithstanding the State's characterization of Garrick as a "confidential informant," no one could testify as to her track record,

*i.e.,* her history of providing credible information in the past. *Cf. Carmouche,* 10 S.W.3d at 326 (placing significant emphasis on informant's previous history of providing reliable information to authorities in concluding warrantless stop of vehicle was constitutionally justified based upon informant's bare tip that defendant would show up at a designated time and place). At the suppression hearing, the court questioned Bachmann rather extensively about his knowledge of Garrick's past reliability. The following colloquy took place:

Q. Did–what did you do to satisfy yourself about the reliability of the informant's information?

A. Well, just the fact that the vehicle matched the description, came back at the time when it was supposed to come back, and the license plate returned to the vehicle—or to the subject that we were receiving information on, and the number of subjects that were inside the vehicle—that was enough for me.

Q. Well, of course, that information doesn't add up to there being dope in the car.

A. Right. After—that doesn't add up to dope being in the car. But after I had the vehicle stopped the nervous behavior I got from Mr. Smith—the pacing he was doing—I couldn't get him to stand in one position behind the vehicle. That—

Q. Let me hone in on this.

A. Okay.

*Q. What information did you receive from the peace officer who transmitted this—all of this CI information to you about how reliable the CI was?*

*A. He—Investigator Rawls basically just told me that he had received information from her in the past, and that also the Bryan Street Crimes Apprehension Team had received information*

*from her in the past. And that was all the information I had.*

*Q. No adjective goes with that—just information?*

*A. Right.*

*Q. We've received information from her in the past. Street Crimes Apprehension Team has received information from her in the past. And that's it.*

*A. Yes, sir.*

*Q. Okay. Well, notwithstanding the words that were used, does that signify anything about the reliability of the CI in your mind?*

*A. No. It didn't signify—as far as her reliability?*

*Q. Yes.*

*A. I don't work with CIs, so I don't rely on any of the CIs. I rely on what the police officer's telling me.*

*Q. Okay. So would it have made any difference in this case if the officer had said nothing about any reliability? If the person who informed you about the CI had said nothing about any prior use of the CI—or the reliability of any information they had been given in the past, would that have made any difference to you in this case?*

*A. I still would have stopped the vehicle.*

*Q. And that would have been because why?*

*A. Because a police officer gave me the information that—I mean, he gave me the exact time, the vehicle description, the license plate—*

*Q. Okay. I understand. So you—the facts that you observed matched up with the information that you got from the CI. And then you found the nervous behavior.*

*A. Yes, sir.*

(Emphases our own.)

At trial, Bachmann agreed he knew nothing about Garrick's credibility prior to stopping appellant. The State also called two additional witnesses, College Station patrol officers Kenneth Smith and Robert Wilson, both of whom were involved in the arrest and subsequent investigation of appellant. Smith testified he never even heard Garrick's name before he was asked about her at trial. Wilson testified that he met Garrick once before but did not elaborate. Importantly, neither testified that Garrick had a history of providing reliable information. Just as importantly, Rawls was not called by the State. There was also no evidence—from any source—as to what Garrick told Rawls about this particular tip or about Garrick's veracity, such as whether she told Rawls how she knew appellant bought heroin or whether she told Rawls the reason she was turning in appellant, who was her boyfriend.[8] *Cf. Oregon v. Shumway*, 124 Or.App. 131, 861 P.2d 384, 385 (1993) (concluding factor officer may have to consider is whether informant has ulterior motive for coming forward); *see also Brown v. United States*, 590 A.2d 1008, 1015 (D.C.1991) (stating citizen informants are presumptively reliable based on the *assumed absence* of ulterior motives).

---

**8.** This is particularly important in light of Garrick's testimony at trial. She essentially told jurors that she simply assumed appellant bought heroin at an auto parts store while she waited in the car outside. In a bench conference at trial, even the State agreed that, "because he got his drugs from Houston and the frequency and the regularity of his visits, she made that *assumption*, and that's why she called [Rawls]." (Emphasis our own.) In short, she had a hunch. *Cf. Rojas*, 797 S.W.2d at 44 (finding no probable cause to search where "[t]here was no evidence that the [anonymous] informer ever asserted that he had any personal knowledge whatsoever of contraband.").

■■■■■ Simply corroborating details that are easily obtainable at the time the information is provided does not furnish a basis for reasonable suspicion justifying an investigatory detention. *Garcia v. State,* 3 S.W.3d 227, 235 (Tex.App.—Houston [14th Dist.] 1999, no pet.). Although an accurate description of a subject's location and appearance is reliable in a limited sense and will, of course, help the police correctly identify the person whom the informant means to accuse, such a tip does not show that the tipster has knowledge of concealed criminal activity. *Florida v. J.L.,* 529 U.S. 266, 271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). Reasonable suspicion requires that the tip be reliable, not just in its tendency to identify a determinate person, but in its assertion of illegality. *Id.* (citing 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 9.4(h) (3d ed.1996)). Here, in addition to lacking anything which established Garrick's past reliability, the record also does not reflect what Garrick actually told authorities.[9]

■■■■■ The State concedes that Bachmann's sole basis for stopping appellant was a conversation he had with Rawls regarding the fact that Rawls "received information from [Garrick] that [appellant] had gone to Houston to purchase a quantity of heroin."[10] Bachmann himself observed no "unusual conduct" and corroborated nothing which would lead him "reasonably to conclude ... that criminal activity may be afoot." *Terry,* 392 U.S. at 30, 88 S.Ct. 1868. He saw nothing more than a vehicle driving along a well-traveled corridor from Houston to Bryan in the early evening hours. *Compare Gates,* 462 U.S. at 243, 103 S.Ct. 2317 (corroborating details obtained from anonymous letter where details included unusual method of travel) *and Angulo v. State,* 727 S.W.2d 276 (Tex.Crim.App.1987) (finding sufficient reliability where officer testified that he had been involved in previous surveillance at that address known for suspected narcotics activity and also had information from another reliable confidential informant) *with Glass v. State,* 681 S.W.2d 599 (Tex.Crim.App.1984) (finding facts did not support investigatory stop where officers, based on an anonymous telephone call, responded by going to the designated location, but saw no unusual activity). Here, there is no suggestion in

9. For instance, assuming her testimony was consistent with what she told Rawls, then the Task Force's suspicion was based on her assumption that appellant bought drugs. But a hunch is insufficient to establish reasonable suspicion. *See, e.g., Glass v. State,* 681 S.W.2d 599, 601 (Tex.Crim.App.1984) (stating "suspicion, or good faith of the investigating officer is *never sufficient* to justify a police officer to order a subject to stop his motor vehicle or to order a subject from his automobile. Otherwise, '[i]f subjective [belief] alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, places, and effects, only in the discretion of the police.' ") (citing *Beck v. Ohio,* 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). And if a hunch by an officer acting in good faith is insufficient, it certainly stands to reason that a hunch from a CI would be insuffi-

cient, particularly if the CI is one of unproven reliability and where she testified she was motivated by ill will towards appellant after he kicked her out of his house.

10. At trial, Bachmann testified that he currently had no information about Beverly Garrick's credibility. In addition, he stated that no such information was communicated to him prior to the stop. Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion, but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation. *See United States v. Hensley,* 469 U.S. 221, 230–33, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

the record that appellant engaged in any behavior foretelling imminent danger that would require Bachmann to act immediately and forego conducting surveillance.[11]

Whether Garrick is closer to an anonymous tipster or a known informant we need not decide, for the record is clear that her reliability was not established.[12] Additionally, the record is devoid of anything indicating what she told authorities and the basis for her supposed "knowledge." The State's evidence shows, without elaboration, only that Garrick was used before. *Cf. McCray v. Illinois*, 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) (concluding that informant was credible upon a showing that he provided information about narcotics activities 20 to 25 times in the past and that information resulted in numerous convictions); *Johnson v. State*, 32 S.W.3d 294, 298 (Tex. App.—San Antonio 2000, pet. ref'd) (finding sufficient reasonable suspicion where undercover narcotics officer testified that information received from a confidential informant who was credible and reliable, providing true and correct information numerous times in the past); *Daniels v. State*, 999 S.W.2d 52, 56 (Tex.App.—Houston [14th Dist.] 1999, no. pet.) (finding confidential police informant reliable

where officer testified that Houston police had used her on approximately 20 investigations and found her to be both credible and reliable on all occasions).[13]

We hold that the detention in this case was illegal. As appellant's consent to search the vehicle was tainted by the illegal stop, the evidence obtained in the search was inadmissible. *See, e.g., Munera v. State*, 965 S.W.2d 523, 532 (Tex. App.—Houston [14th Dist.] 1997, no pet) (stating that "[t]o permit the admission of any evidence discovered from a search after an illegal detention, the State must show by clear and convincing evidence that the taint of the illegal detention is too attenuated to also taint the consent to search."). A decision contrary to the one we reach today would considerably weaken the Fourth Amendment protections against unreasonable governmental intrusion into constitutionally safeguarded areas of our lives.

## IV. Conclusion

We find that the evidence does not support the trial court's finding that Bachmann had reasonable suspicion to stop appellant. The illegal stop tainted appel-

---

11. At trial, Bachmann agreed that the particulars verified by him before the stop—the appellant's identity, vehicle, time of travel, and route—were not inherently suspicious or suggestive of criminal activity.

12. For instance, if she were an anonymous tipster, there is simply nothing corroborative about what she told Rawls. Nor is there any demonstration about future predictability, other than appellant would be on a main thoroughfare between Houston and Bryan/College Station. On the other hand, what separates confidential informants from anonymous tipsters is, primarily, two considerations—both their identity and their track record are known to police officers. But one without the other does little to establish reasonable suspicion. In other words, while the

record indicates Garrick was known to the officers, if her track record had indicated she had *never* given reliable information previously, certainly that would make a difference in evaluating the reasonableness of Bachmann's suspicion.

13. *See also* 2 Wayne R. LaFave, Search and Seizure § 3.3(b), at 105 (3d ed.1996) (stating "[a]s a practical matter, however, 'stool pigeons' are neither Boy Scouts, princes of the church, nor recipients of testimonials. With the typical confidential police informant, we have recourse only to his 'track record' of past performances.") (citing Charles E. Moylan, Jr., *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L.Rev. 741, 765 (1974)).

lant's consent to search. Because Bachmann did not have reasonable suspicion, the trial court erred in refusing to grant appellant's motion to suppress at the conclusion of the jury trial. We, therefore, reverse the judgment of the trial court on appellant's second point of error and remand the case for further proceedings consistent with this opinion. Because of our disposition on this point of error, we do not address appellant's remaining points.