02-10-027-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-10-00027-CR

 

 


 
 
 Kelli Noel Torrence
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 396th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

 

Appellant
Kelli Noel Torrence pleaded guilty to possession with intent to deliver more
than four but less than two hundred grams of methamphetamine and was given six
years’ deferred adjudication.  See Tex. Health & Safety Code Ann. §§
481.102(6), .112(a), (d) (West 2010).  In a sole point, she contends that the
trial court erred by denying her motion to suppress the evidence obtained as a
result of an allegedly illegal detention, which she argues was unnecessarily
prolonged to conduct a canine sniff.  We affirm.

II.  Background

Investigator
Doug Deweese is a narcotics investigator with the Tarrant County District
Attorney’s office with more than twelve years’ experience in narcotics
investigations.  On October 1, 2007, Investigator Deweese was investigating
narcotics leads in the White Settlement area of Fort Worth with his field
supervisor Sergeant Peabody.  As Investigator Deweese waited outside a
convenience store while Sergeant Peabody got a drink, he saw a 1998 Dodge
Durango with license plate number 930JMJ that a confidential informant had
previously described to him as the vehicle Appellant used to deal “ice” or
methamphetamine.  The informant had said that Appellant “was dealing in
narcotics and that she would many times carry narcotics in the Durango with
her.”  After receiving this information, Investigator Deweese pulled
Appellant’s driver’s license number from Tarrant County Jail booking records, accessed
her driver’s license photograph through DPS records, and confirmed that the
Dodge Durango was registered to her. 

Investigator
Deweese and Sergeant Peabody remained in their vehicle and watched as the Dodge
Durango and another vehicle pulled close together in a Waffle House parking lot
and stopped “driver’s door to driver’s door.”  There was only one person in
each vehicle, the vehicles were close enough for the drivers to reach one
another, and it looked to Investigator Deweese as if the two drivers “might
have shook hands or possibly made a drug transaction.”[2]  After
about five minutes, the vehicles drove away in separate directions.  Although Investigator
Deweese could not recall the make of the second vehicle, he identified
Appellant in open court as the driver of the Dodge Durango.

Because
he suspected criminal activity while watching the transaction between Appellant
and the second driver, Investigator Deweese called the Fort Worth Police
Department to determine if a patrol unit was available to make a traffic stop.  Fort
Worth Police Department Officer A.R. White called Investigator Deweese by
mobile telephone, and Investigator Deweese provided Officer White with information
about Appellant’s vehicle, location, and direction of travel and what had
transpired in the Waffle House parking lot.  Investigator Deweese also informed
Officer White that he would need his own probable cause—beyond the information
provided to him—before making the traffic stop.

Officer
White located Appellant’s Dodge Durango and followed it until he observed two
traffic violations.  He initiated a traffic stop, and upon approaching the
vehicle, he noticed Appellant “reaching and making furtive movements in the
vehicle towards the center console and underneath the seat as if she were
reaching for or concealing something.”  He asked Appellant to step out of the vehicle
because he knew of Investigator Deweese’s suspicion of drug activity and
thought Appellant might be reaching for a weapon or attempting to destroy
evidence.  Officer White also noticed that Appellant was “extremely nervous and
trembling.”  He asked her routine questions about insurance and her driver’s
license but said that “[s]he was fumbling around, extremely nervous, more
nervous than the average person is on a traffic stop.”  Officer White also
thought Appellant was hesitant in answering his questions, and he observed her
“visibly trembling” as he spoke with her.  Another officer conducted a pat-down
search of Appellant but did not find any weapons.

Officer
White returned to his car to check on Appellant’s license and registration, and
he also contacted Investigator Deweese by telephone, informing Investigator
Deweese that Appellant denied consent to search or having anything illegal in
the vehicle.[3]  Meanwhile,
Investigator Deweese and Sergeant Peabody had driven to a nearby location to
watch the traffic stop and assist Officer White if needed.  While they waited,
Investigator Deweese contacted the sheriff’s office and requested a unit for a
canine sniff of Appellant’s vehicle.  After Officer White had called Investigator
Deweese, Investigator Deweese approached Officer White and informed him that he
had requested the canine unit, and Officer White informed Investigator Deweese
of his observations during the traffic stop and gave Investigator Deweese
Appellant’s driver’s license.  Officer White then stood by to assist
Investigator Deweese.

Investigator
Deweese approached Appellant and observed that she appeared nervous.  She
answered Investigator Deweese’s questions, but she was fidgety and sweating
profusely even though it was October.  By contrast, Officer White was not
sweating despite wearing a bullet-proof vest and a dark uniform.  Investigator
Deweese advised Appellant of his suspicion and what he had seen, and he told
her that a canine unit was en route but that it could be forty-five minutes before
the unit arrived.  Investigator Deweese told Appellant that she was free to
leave but that he was going to detain her vehicle until the unit arrived.  Appellant
elected to remain with her vehicle.

The
unit arrived about twenty-five minutes later, and the canine alerted on the
rear passenger area of Appellant’s vehicle.  Inside the Dodge Durango, Investigator
Deweese found a plastic container with a green leafy substance he recognized to
be marijuana and a yellow, plastic bowl containing a crystal substance that
later tested positive for methamphetamine.

Investigator
Deweese testified that the area around the Waffle House, where he had observed
Appellant engage in a possible drug transaction, is a “very high crime area”
with a lot of drug traffic and criminal activity.  He based his opinion on his
experience of executing search warrants in the area and information from the
Fort Worth Police Department that they “saturate” the area with patrol units
because of the criminal activity.  On cross-examination, Investigator Deweese
clarified that he believes the high-crime area near the Waffle House includes
the geographic area “within a mile or so” of the Waffle House. 

Investigator
Deweese testified that he believed the information from the confidential
informant to be credible and reliable based on his experience with the
informant.  Investigator Deweese had received information from the informant on
two or three different occasions when the informant had observed Appellant in
possession of methamphetamine, and the informant had last seen Appellant with
methamphetamine “a week or so” earlier.  However, Investigator Deweese could
not recall the date he acquired the information from the informant about
Appellant and said he received the information about Appellant either in person
or by telephone within a month of Appellant’s arrest.  Further, although Investigator
Deweese testified that the informant had given him information that he had
successfully used on more than one occasion, he acknowledged that his affidavit
in this case only mentioned one prior felony arrest and that he could not
remember the date of the prior arrest.  Investigator Deweese clarified, though,
that the affidavit does not mention other times he had obtained accurate
information from the informant and that he does not arrest every person he
investigates, even if he finds them in possession of drugs.

III. 
Discussion

          Appellant
does not challenge the traffic stop by Officer White but contends there was no
reasonable suspicion to detain her vehicle for a canine sniff after the traffic
stop had concluded.  The State responds that Appellant failed to preserve her
complaint for appeal and alternatively contends that police had reasonable
suspicion to detain Appellant’s vehicle to continue their investigation.

A.  Preservation
of Error

          As
a threshold matter, we address the State’s argument that Appellant failed to
preserve her complaint for appeal.  To preserve a complaint for our review, a
party must have presented to the trial court a timely request, objection, or
motion that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.  Tex. R. App.
P. 33.1(a)(1); Layton v. State, 280 S.W.3d 235, 238–39 (Tex. Crim. App.
2009).  The error alleged on appeal must correspond to the objection made at
trial.  Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).  Further,
the trial court must have ruled on the request, objection, or motion, either
expressly or implicitly, or the complaining party must have objected to the
trial court’s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State,
138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not
address the merits of an issue that has not been preserved for appeal.  Ford
v. State, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

“A
motion to suppress is a specialized objection to the admissibility of
evidence,” and it must meet the same requirements as an objection.  Id. 
The two purposes of the specificity requirement are “to inform the trial judge
of the basis for the objection” and provide “opposing counsel the opportunity
to cure the objection or supply other testimony.”  Zillender v. State,
557 S.W.2d 515, 517 (Tex. Crim. App. 1977) (op. on reh’g).  Here, the motion to
suppress was timely, and the trial court denied the motion.  The issue is therefore
whether the complaint was sufficiently specific.  Rule of appellate procedure
33.1(a)(1)(A) requires that a complaint be made “with sufficient specificity to
make the trial court aware of the complaint, unless the specific grounds were
apparent from the context.”  Tex. R. App. P. 33.1(a)(1)(A).

          Appellant
filed two motions to suppress.  The second motion specifically stated that the
trial court must “determine whether the canine sniff of [Appellant’s] vehicle
was, in fact, based on a reasonable suspicion that criminal activity was
afoot.”  It also argued that “only if the sum of the information known by the
officers on the scene was sufficient to provide a reasonable suspicion that
narcotics were in [Appellant]’s vehicle could the continued detention in order
to conduct a dog sniff be considered reasonable.”  Moreover, the second motion
stated that “the information allegedly received from the confidential informant
does not lend itself to a finding of reasonable suspicion.”[4] 
Finally, when the trial court asked Appellant’s attorney at the suppression
hearing “where the [d]efense is coming from on the suppression issue,”
Appellant’s attorney specifically mentioned the transaction at the Waffle House
being consistent with innocent conduct, the allegedly weak evidence that the
transaction occurred in a high crime area, the lack of information concerning
the informant’s reliability, and Appellant’s alleged nervousness, and he said
that each of these was not a basis for a warrantless search.  Appellant’s
attorney also stated that the issues for the court are “prior to the start of
the canine” sniff.  Appellant’s complaints on appeal are exactly those expressly
set forth in her second motion to suppress, which was denied by the trial court. 
We do not agree with the State’s contention that Appellant failed to
sufficiently complain to the trial court that her detention was prolonged for a
canine sniff without reasonable suspicion.  We therefore hold that Appellant
preserved her complaint for appellate review.  See Tex. R. App. P.
33.1(a) (requiring the complaining party to present to the trial court a timely
request, objection, or motion that states the specific grounds for the
desired ruling); Wilson, 71 S.W.3d at 349 (stating that “the point of
error on appeal must comport with the objection made at trial”).

B.  Reasonable Suspicion

 

          Appellant,
challenging the information provided by the confidential informant and the
other information known to the officers on the scene, contends that there was
no reasonable suspicion to detain her vehicle for a canine sniff once the
initial traffic stop had concluded.

1.     Standard of Review

 

          We
review a trial court’s ruling on a motion to suppress under a bifurcated
standard of review, giving “almost total deference” to the trial court’s
findings of historical fact supported by the record and reviewing de novo the
trial court’s application of the law to the facts that do not depend upon credibility
and demeanor.  Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App.
2007).  When the trial court fails to make explicit findings of fact, we
“review the evidence in a light most favorable to the trial court’s ruling and
assume that the trial court made implicit findings of fact supported by the
record.”  Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); see
Weide v. State, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

2.  Applicable Law

 

          The
Fourth Amendment protects against unreasonable searches and seizures by
government actors.  Weide, 214 S.W.3d at 24.  Because this was a
warrantless search, the search is presumptively unreasonable, and the State has
the burden to rebut that presumption.  See Ford, 158 S.W.3d at 492.  A
search or seizure must be reasonable both at its inception and in its scope.  Terry
v. Ohio, 392 U.S. 1, 25–26, 88 S. Ct. 1868, 1882 (1968).  The scope is
limited to effectuating the reason for the stop.  Id.  Continued
detention is justified only by reasonable suspicion that another offense has
been or is being committed.  Davis v. State, 947 S.W.2d 240, 245 (Tex.
Crim. App. 1997).

          Reasonable
suspicion requires specific articulable facts which, taken together with
rational inferences from those facts, would lead an officer to reasonably
conclude that the suspect is, has been, or soon will be engaged in criminal
activity.  Ford, 158 S.W.3d at 492–93.  This is an objective standard
that disregards the officer’s subjective intent and looks solely to whether
there was an objective basis for the suspicion.  Id. at 492.  We do not
separately evaluate and accept or reject the individual objective facts relied
on to establish reasonable suspicion because doing so does not adequately
consider the totality of the circumstances; indeed, piecemeal evaluation and
rejection of individual factors is prohibited by the Supreme Court.  See
United States v. Arvizu, 534 U.S. 266, 274, 122 S. Ct. 744, 751 (2002); United
States v. Sokolow, 490 U.S. 1, 9–10, 109 S. Ct. 1581, 1586–87 (1989).  We also
do not consider the subjective motivation of the officer, but we do consider
the officer’s training, knowledge, and experience.  Wiede, 214 S.W.3d at
25.  Further, “the cumulative information known to the cooperating officers at
the time of the stop is to be considered in determining whether reasonable
suspicion exists.”  Derichsweiler v. State, No. PD-0176-10, 2011 WL
255299, at *4 (Tex. Crim. App. Jan. 26, 2011) (quoting Hoag v. State,
728 S.W.2d 375, 380 (Tex. Crim. App. 1987)).

          When
making a determination of reasonable suspicion, “the relevant inquiry is not
whether particular conduct is innocent or guilty but the degree of suspicion
that attaches to particular types of noncriminal acts.”  Sokolow, 490
U.S. at 10, 109 S. Ct. at 1587 (quoting Illinois v. Gates, 462 U.S. 213,
243–44 n.13, 103 S. Ct. 2317, 2335 n.13 (1983)); Woods v. State, 956
S.W.2d 33, 38 (Tex. Crim. App. 1997).  “When used by trained law enforcement
officers, objective facts, meaningless to the untrained, can be combined with
permissible deductions from such facts to form a legitimate basis for suspicion
of a particular person.”  Woods, 956 S.W.2d at 37–38 (quoting United
States v. Cortez, 449 U.S. 411, 419, 101 S. Ct. 690, 695–96 (1981)).

The detainee’s
behavior can be a factor in determining the existence of reasonable suspicion. 
Illinois v. Wardlow, 528 U.S. 119, 124–25, 120 S. Ct. 673, 676 (2000). 
Evidence of nervousness, furtive gestures, sudden movements, or flight alone
may be innocent, but if these actions are combined with other factors, they can
give rise to reasonable suspicion.  Id.; Worthey v. State, 805 S.W.2d
435, 438–39 (Tex. Crim. App. 1991).  Officers may rely on their training,
knowledge, and law enforcement experience to reach their level of suspicion.  Cortez,
449 U.S. at 419, 101 S. Ct. at 695–96; Weide, 214 S.W.3d at 25.

In
addition, a confidential informant can provide the requisite reasonable
suspicion to justify an investigative detention provided additional facts are
present to demonstrate the informant’s reliability.  See Carmouche v. State,
10 S.W.3d 323, 328 (Tex. Crim. App. 2000).  “In situations involving the police’s
use of an informant, we consider the informant’s reliability in analyzing the
totality of the circumstances.”  Smith v. State, 58 S.W.3d 784, 789
(Tex. App.—Houston [14th Dist.] 2001, pet. ref’d) (citing Cortez, 449
U.S. at 417, 101 S. Ct. at 695; Woods, 956 S.W.2d at 38).  While
an unverified tip may be insufficient to support arrest or a warrant, a tip by
a known informant who has provided information in the past carries sufficient
indicia of reliability to justify a stop.  Adams v. Williams, 407 U.S.
143, 146–47, 92 S. Ct. 1921, 1923–24 (1972).

3. 
Discussion

          Although
Appellant does not challenge the initial traffic stop, we note that it was
reasonable because it was based on the patrol officer’s observation of two
traffic violations.  Crittenden v. State, 899 S.W.2d 668, 674 (Tex.
Crim. App. 1995).  This is true even though the traffic stop was a pretext for
pursuing further investigation of Appellant’s narcotics activity.  Id. at
671, 674; Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). 
But before the officers could detain Appellant’s vehicle for a canine sniff
beyond the time required for the initial traffic stop, there must have been a
reasonable suspicion that her vehicle contained narcotics.  See Crockett v.
State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991).

          When
Investigator Deweese informed Appellant that he was detaining her vehicle until
a canine unit arrived for an olfactory sniff, the officers on the scene had several
pieces of information.[5]  First, a confidential
informant had provided Investigator Deweese with Appellant’s name, the make and
model of her vehicle, and her vehicle’s license plate number; the informant had
seen Appellant with methamphetamine on two or three occasions, most recently
about a week earlier and had said that Appellant often carried methamphetamine
in the vehicle; and the informant had given accurate information on more than
one occasion in the past, leading to at least one felony arrest.  Investigator
Deweese had confirmed that the Dodge Durango matching the informant’s
description was registered to Appellant, and he had accessed Appellant’s
driver’s license photograph to confirm her identity.  Moreover, Investigator
Deweese had watched as Appellant and another person, in a high crime area,
parked their vehicles “driver’s door to driver’s door” and either shook hands
or exchanged something, and he believed this to have been a drug transaction
based on his training and experience.  Finally, the officers had observed that
Appellant made furtive movements in the cab of her vehicle, was more nervous
than the average person during a traffic stop, was visibly trembling and
fidgety, was hesitant to answer Officer White’s questions, and was sweating profusely
on an October day.

This
case is similar to two others in which our sister courts held there was
reasonable suspicion to justify the detention.  See State v. 1998 Toyota
Land Cruiser, 277 S.W.3d 88 (Tex. App.—Amarillo 2009, no pet.); Gonzales
v. State, No. 04-06-00259-CR, 2007 WL 1752130 (Tex. App.—San Antonio June
20, 2007, no pet.) (mem. op., not designated for publication).  In Gonzales,
an undercover officer received information concerning a large shipment of
cocaine to the target of an ongoing narcotics investigation.  2007 WL 1752130,
at *1.  The officer began surveillance at the specified address and
subsequently watched as Gonzales pulled into the driveway.  Id.  The
suspected drug dealer exited the residence, entered the front passenger side of
Gonzales’s vehicle, appeared to have exchanged something with Gonzales, and
returned to the residence.  Id.  Gonzales drove away but was soon
stopped for failure to wear a seatbelt.  Id.  While standing outside his
vehicle as the traffic officer conducted a routine background check, Gonzales
began acting nervously, pacing back and forth, and putting his hands in his
coat pockets and inside his jacket.  Id.  The background check revealed
that Gonzales had numerous narcotics offenses and was on probation.  Id.
at *2.  At that point, the undercover officer requested a canine unit for a
sweep of Gonzales’s vehicle.  Id.  In total, Gonzales was detained for
less than thirty minutes.  Id.  Based on these facts, the court held
that the trial court did not err by determining that the officers had
reasonable suspicion to believe Gonzales was involved in the ongoing criminal
activity of drug trafficking.  Id. at *4.

In 1998
Toyota Land Cruiser, an officer was conducting surveillance for alcohol
violations and other offenses when he saw a truck parked in a parking lot some
distance from the nearby pizza parlor.  277 S.W.3d at 89–90.  The officer then
saw the appellant drive the Land Cruiser into the parking lot and park next to
the truck.  Id. at 90.  The officer watched as the lone occupant of the
truck entered the Land Cruiser and the appellant, still in the Land Cruiser,
grabbed a back pack, retrieved items from it, and placed them on the center
console.  Id.  Believing that he had observed a drug transaction, the
officer called for backup, and the uniformed officers initiated contact with
the appellant and the passenger in the Land Cruiser.  Id.  Holding that
the officers had reasonable suspicion to temporarily detain the appellant and
the passenger in the Land Cruiser, the court stated, “[T]o an officer charged
with conducting surveillance in the area for alcohol related and other
offenses, [the observed circumstances] were reminiscent of those performed in a
drug transaction.  Given that, [the officers] had reasonable suspicion to
believe criminal activity was afoot.”  Id.  Similar to both Gonzales
and 1998 Toyota Land Cruiser, the officers in this case had information
about Appellant’s suspected narcotics activity, and they observed her engage in
a suspected drug transaction, make furtive gestures, act nervously and visibly
tremble and fidget, hesitantly answer Officer White’s questions, and sweat
profusely on an October day when Officer White was not sweating.

Appellant
cites several cases to support her argument that there was no reasonable
suspicion to continue her detention to permit the canine sniff, and in doing
so, she separately challenges the information received from the confidential
informant and most of the other facts known to the officers.  For example,
Appellant argues that the informant was not shown to be reliable and that the
information from the informant could have been stale and was not independently
corroborated by Investigator Deweese.  See Smith, 58 S.W.3d at 789–93; State
v. Williams, 812 S.W.2d 46 (Tex. App.—Corpus Christi 1991, no pet.). 
Appellant also points out that nervousness, sweating, furtive gestures, or
presence in a high crime area are not enough, alone, to support reasonable
suspicion.  See Davis, 947 S.W.2d at 241; Sieffert v. State, 290
S.W.3d 478 (Tex. App.—Amarillo 2009, no pet.); St. George v. State, 197
S.W.3d 806 (Tex. App.—Fort Worth 2006), aff’d, 237 S.W.3d 720 (Tex.
Crim. App. 2007); Herrera v. State, 80 S.W.3d 283 (Tex. App.—Texarkana
2002, pet. ref’d); Klare v. State, 76 S.W.3d 68 (Tex. App.—Houston [14th
Dist.] 2002, pet. ref’d); McQuarters v. State, 58 S.W.3d 250 (Tex.
App.—Fort Worth 2001, pet. ref’d).  

Appellant’s
arguments are misplaced.  First, Appellant’s attempt to separate and
individually challenge the individual pieces of information known to the
officers at the time of the continued detention has been rejected by the
Supreme Court.  See Arvizu, 534 U.S. at 274, 122 S. Ct. at 751 (rejecting
piecemeal evaluation and rejection of individual factors).  Rather than
separately analyzing and accepting or rejecting the objective facts known to
the officers in conducting a reasonable suspicion analysis, we must view all of
the objective facts in the aggregate as part of the totality of the
circumstances.  See id., 122 S. Ct. at 751; Ford, 158 S.W.3d at
492–93.  Moreover, each of Appellant’s cases is distinguishable and does not
adequately address the totality of the circumstances present in this case.  For
example, in McQuarters, the appellant was stopped for suspicion of DUI,
but the officer quickly determined that the appellant was not intoxicated.  See
58 S.W.3d at 253.  And although the appellant appeared nervous, he and his
passenger gave conflicting accounts of their recent trip to Dallas, the
appellant’s license had been revoked, and the vehicle he drove was rented but
not to him or his passenger, the appellant did not lie to the officer or have
any prior drug offenses.  Id. at 257.  There was also no smell of
marijuana eminating from the car.  Id.  We held that although there was
reasonable suspicion of intoxication, there was none relating to narcotics
activity because “a reasonable suspicion that [the] appellant was hiding
narcotics in the car could not be rationally inferred from [those] facts.”  Id. 
But McQuarters is easily distinguishable because there was nothing in
that case similar to Appellant’s apparent drug transaction in the Waffle House
parking lot or the information obtained from the confidential informant.  See
id. at 253–54, 257.

And
in Smith, there was no evidence in the record to establish the
informant’s reliability, and the officers did not observe any other conduct
that supported a reasonable suspicion of ongoing narcotics activity.  See
58 S.W.3d at 790–91, 792–93.  In other words, even though the reliability of a
confidential informant is only part of an examination of the totality of the
circumstances for purposes of determining reasonable suspicion, Smith
hinged entirely on the informant’s reliability because there were no other
objective facts supporting reasonable suspicion.  Id. at 789, 791–92. 
Unlike Smith, the informant in this case had provided Investigator
Deweese with accurate information in the past—including information leading to
at least one felony arrest; the informant had seen Appellant with
methamphetamine within the previous week; and the officers observed Appellant
engage in the apparent drug transaction at the Waffle House and become nervous,
fidgety, and hesitant during the traffic stop.[6]  

The
objective facts known to the officers on the scene at the time Appellant’s initial
traffic stop concluded, viewed in their totality, include the information from
the confidential informant, Investigator Deweese’s verification of Appellant’s
identity and vehicle, the apparent drug transaction at the Waffle Ho2444use,
and Appellant’s behavior during the initial traffic stop.  These facts provided
the officers with a substantial basis for concluding that Appellant was, had
been, or soon would be involved in illegal narcotics activity.  See Ford,
158 S.W.3d at 492–93; 1998 Toyota Land Cruiser, 277 S.W.3d at 90–91; Gonzales,
2007 WL 1752130, at *4.  Therefore, there was reasonable suspicion to justify
Appellant’s continued detention for an olfactory inspection of the outside of
her vehicle.  See Ford, 158 S.W.3d at 492–93; 1998 Toyota Land
Cruiser, 277 S.W.3d at 90–91; Gonzales, 2007 WL 1752130, at *4.  We
hold that the trial court did not abuse its discretion by denying Appellant’s
motion to suppress, and we overrule Appellant’s sole issue.  

IV. 
Conclusion

          Having
overruled Appellant’s sole issue, we affirm the trial court’s judgment.

 

ANNE GARDNER
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  June 23, 2011









[1]See Tex. R. App. P. 47.4.





[2]Investigator Deweese later
clarified that although he did not actually see any money or other items
exchanged between the drivers and had not used binoculars, “[i]t appeared to
[him] as though they had made – either shaken hands or made a drug transaction”
and that he believed it to be a drug transaction based on his many years of
experience in conducting surveillance and seeing similar activity.





[3]Investigator Deweese
similarly testified that Officer White had called him and had said Appellant
was “very nervous acting,” was fidgety, and had refused consent to a search of
the Dodge Durango.





[4]The State characterizes
Appellant’s second motion to suppress as only challenging the warrant for her
arrest, but the State ignores the express statements quoted above that
challenge reasonable suspicion to justify her continued detention for a canine
sniff.





[5]According to the
applicable standard of review and because the trial court did not make findings
of fact, we set forth the facts here in the light most favorable to the trial
court’s ruling.  See Weide, 214 S.W.3d at 25; Ford, 158 S.W.3d at
493.





[6]Each of the other cases
cited by Appellant is similarly distinguishable.  None of the cases involved
conduct similar to the transaction at the Waffle House, information such as
that provided by the confidential informant, or both.  See Davis,
947 S.W.2d at 241; Sieffert, 290 S.W.3d at 480–82; St. George,
197 S.W.3d at 812–14; Herrera, 80 S.W.3d at 286–87; Klare, 76
S.W.3d at 71; see also Williams, 812 S.W.2d at 47, 48–49 (noting
that although the officer received information from an informant the day
before, the officer observed nothing unusual or illegal at or near the time he
stopped the appellant).