

# NUMBER 13-23-00123-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MELISSA TREVINO,                                          **Appellant,**

**v.**

THE STATE OF TEXAS,                                      **Appellee.**

## ON APPEAL FROM THE 156TH DISTRICT COURT
## OF BEE COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Tijerina and Peña
### Memorandum Opinion by Justice Tijerina

Appellant Melissa Trevino pleaded guilty to possession with intent to deliver methamphetamine in an amount between four and 200 grams, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d). Her sentence was enhanced based on her status as a habitual felony offender, and she was sentenced to twenty-five years'

imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(d). Trevino argues the trial court erred in denying her motion to suppress. We affirm.

## I. BACKGROUND

The trial court held a hearing on Trevino's motion to suppress on February 16 and February 28, 2023, and the following transpired.

Officer Baldo Salazar, with the Beeville Police Department, testified that he received information from a confidential informant that Johnny Minjarez was manufacturing and delivering methamphetamine with Trevino at El Camino Motel. According to the informant, Minjarez and Trevino were together in room 30, and Trevino "possibly had some methamphetamine with her." Officer Salazar clarified that his informant was reliable because he had used this informant five or six times prior and has successfully made arrests based on this informant's information.

Officer Salazar testified that he had previously made "buys" from Minjarez via undercover operations, so he "knew [Minjarez] to sell narcotics" and assumed Minjarez and Trevino would be selling narcotics. Specifically, Officer Salazar had purchased methamphetamine from Minjarez two weeks before this incident, and there was an active arrest warrant for Minjarez.

Based on this information, Officer Salazar arrived at the motel and asked the front desk staff if there were any guests under the names "Trevino" or "Minjarez." Staff confirmed Trevino and Minjarez were staying in room 30. Officer Salazar requested the motel staff "to see if they could get either Ms. Trevino or Mr. Minjarez to come to the front

2

of the lobby."[1] The motel staff requested that Trevino come down to the lobby, and she complied.

Officer Salazar explained that he chose to use the motel staff to procure Minjarez or Trevino rather than knock on room 30 due to safety issues. He explained that he was executing a felony warrant, and because it was just him and Officer Colton Rodriguez dealing with a known narcotics dealer, he did not feel safe approaching the room without additional backup officers.

Officer Salazar's body camera video was admitted into evidence. In the video, Officer Salazar greeted Trevino and stated, "We're here to talk to you. We need you to come with us." Trevino responded, "Okay," and they exited the motel lobby. They proceeded to the motel parking lot sidewalk where Officer Salazar questioned whether anyone was in Trevino's room. He informed her that if she lied, he would end up taking her to jail. Trevino informed Officer Salazar that no other person was in her motel room, and she offered Officer Salazar her room key. Officer Salazar asked Trevino whether there were any narcotics in the room. Trevino responded, "It's just weed, and a little bit of meth." Officer Salazar asked her, "Where's your key?" Trevino provided it to him.

Backup officers arrived, and Trevino was patted down by Officer Stephanie Martin. In the video, Officer Martin stated, "I saw you drop that," and a loose white substance was shown on the ground. Officer Salazar testified that during Trevino's pat down, he

---

[1] According to Officer Salazar, "[i]t would have been better for Mr. Minjarez" to come down because "[t]hat way [he could] just take him into custody right there."

3

observed what appeared to him to be loose methamphetamine on the sidewalk, which he clarified was not there earlier.

In the video, Officer Salazar can be seen donning gloves, gathering the loose methamphetamine from the ground, and collecting it in a bag. Officer Martin testified that at this time, she had probable cause to search Trevino as she had reason to believe that there were more narcotics on Trevino's person. Officer Martin proceeded to search Trevino's person and discovered a green leafy substance, which she believed to be marijuana. Trevino was then arrested for tampering with evidence and for possession of a controlled substance.

In the video, Officer Salazar read Trevino her *Miranda* rights. The officers escorted Trevino to the back seat of the patrol unit where they provided Trevino with a consent form. An officer can be heard informing Trevino that by signing the consent form, she is allowing the officers to recover the methamphetamine and marijuana from her motel room. The video then depicts Officer Martin explaining to Trevino the contents of the consent form. Specifically, Officer Martin informed Trevino that she is giving a peace officer the consensual right to make a warrantless search of Trevino's room and any items within her control; Trevino has the constitutional right to refuse the search; Trevino is giving the officers the right to take any items seized from the property; Trevino is giving this consent out of her own free will; that Trevino knows the items seized will be taken by the officers; and Trevino knows the seized items can be used against her in criminal proceedings. Trevino signed the consent form.

From Trevino's motel room, the officers recovered bags of methamphetamine, plastic baggies, a glass pipe, a glass smoking pipe with methamphetamine residue, a glass mirror with methamphetamine residue, a scale, and a vape pen. The trial court denied Trevino's motion to suppress. Trevino pleaded guilty to the offense and was sentenced as stated above. This appeal followed.

## II.    MOTION TO SUPPRESS

Trevino argues she was illegally detained by officers because "the tip from the confidential information did not furnish Officer Salazar with reasonable suspicion to seize Trevino" and "completely lack[ed] foundational evidence that supports this confidential informant's reliability." The State argues "the informant's tip was sufficiently reliable and corroborated to provide reasonable suspicion for a temporary detention," and alternatively, "the police encounter with Trevino did not escalate into a detention or arrest until after she admitted to possession of drugs."

## A.    Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018); *see Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman*, 995 S.W.2d at 89). We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101,

5

107 (Tex. Crim. App. 2006)); *Guzman*, 995 S.W.2d at 89. Accordingly, we review de novo whether a certain set of historical facts gives rise to reasonable suspicion. *Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013).

## B.     Applicable Law

The law recognizes three distinct types of police-citizen interactions: "(1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests . . . [which] are reasonable only if supported by probable cause." *Amador*, 221 S.W.2d at 667. The parties dispute whether this interaction was a consensual encounter or an investigative detention. For purposes of our analysis, we will assume that this case involves the second type of interaction: an investigative detention requiring reasonable suspicion, which is a higher standard. *See id.*

Under the Fourth Amendment, a warrantless investigative detention of a person must be justified by reasonable suspicion. *See id.*; *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler*, 348 S.W.3d at 914. "In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). "Although some

6

circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot." *Id.*; *see also Derichsweiler*, 348 S.W.3d at 914.

Reasonable suspicion depends not only on the content of information received by law enforcement, but on the reliability of the information. *See Matthews*, 431 S.W.3d at 603. To determine the reasonableness of an investigatory detention, courts must consider not only "whether the officer's action was justified at its inception," but also "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). "Reasonable suspicion is not a carte blanche for a prolonged detention and investigation." *Matthews*, 431 S.W.3d at 603. A detention supported by reasonable suspicion may last no longer than is necessary to effectuate its purpose. *Florida v. Royer*, 460 U.S. 491, 500 (1983). "The propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions [of criminal activity] quickly." *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997) (en banc); *see Matthews*, 431 S.W.3d at 603.

"In situations involving the police's use of an informant, we consider the informant's reliability in analyzing the totality of the circumstances." *Smith v. State*, 58 S.W.3d 784, 789 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "A confidential informant can provide the requisite reasonable suspicion to justify an investigative detention so long as additional facts are present to demonstrate the informant's reliability." *Id.* at 790. "[T]he informant's veracity, reliability, and basis of knowledge are highly relevant." *Padilla v.*

7

*State*, 462 S.W.3d 117, 124 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (internal quotations omitted).

## C.    Analysis

Officer Salazar testified that he had a warrant for Minjarez's arrest because he had previously set up undercover narcotics purchases from Minjarez on more than one occasion, including a mere two weeks before this incident. Officer Salazar testified that his confidential informant tipped him off that Trevino and Minjarez were staying at the El Camino Motel in room 30 and were dealing narcotics. According to the confidential informant, Trevino "possibly had some methamphetamine with her" as well. *See State v. Duarte*, 389 S.W.3d 349, 357 (Tex. Crim. App. 2012) (noting that while citizen informants are considered inherently unreliable, confidential informants are not). Officer Salazar testified that this confidential informant had given him reliable information at least five or six times prior, including information leading to several arrests. *See id.* (providing that confidential informants may be considered reliable tipsters if they have a successful "track record"); *see also Adams v. Williams*, 407 U.S. 143, 146–47 (1972) (explaining that information obtained from an informant who has been used before is stronger than an anonymous tip); *Ibarra v. State*, 479 S.W.3d 481, 490 (Tex. App.—Eastland 2015, pet. ref'd) (holding that a sheriff's testimony that he had worked with a confidential informant in the past, and the informant's information had proven reliable in the past was sufficient to establish the informant's reliability). This testimony established the confidential informant's reliability. Furthermore, the information was verified when Officer Salazar arrived at the motel, and the motel manager confirmed that Trevino was staying in room

8

30. *See Smith*, 58 S.W.3d at 790 ("A confidential informant can provide the requisite reasonable suspicion to justify an investigative detention so long as additional facts are present to demonstrate the informant's reliability.").

Based on the totality of the circumstances, we conclude the information obtained from the confidential informant, combined with Officer's Salazar's history of reliability with this confidential informant, Officer Salazar's knowledge regarding Minjarez's prior drug offenses, and the events corroborating the confidential informant's tip, provided Officer Salazar with reasonable suspicion that Trevino was involved in criminal activity such that he was justified in temporarily detaining her. *See Johnson v. State*, 32 S.W.3d 294, 298 (Tex. App.—San Antonio 2000, pet. ref'd) ("After reviewing the totality of the circumstances, we conclude that the warrantless stop of the blue Chevrolet was constitutionally justified based upon the informant's tip that a black male named Gerald was selling cocaine out of his vehicle, the informant's previous history of providing reliable information to the authorities, and the events surrounding the stop which served to corroborate the informant's information."); *see also Davis v. State*, No. 03-13-00456-CR, 2014 WL 5107129, at *3 (Tex. App.—Austin Oct. 8, 2014, no pet.) (mem. op., not designated for publication) ("In light of the testimony presented during the suppression hearing, including the testimony discussing the collective knowledge of the investigating officers involved, describing the reliability of the confidential informant, and specifying the crime that Davis was allegedly committing, we cannot conclude that the district court abused its discretion by denying Davis's motion to suppress."); *Caruthers v. State*, No. 03-01-00390-CR, 2002 WL 1987608, at *3 (Tex. App.—Austin Aug. 30, 2002, pet. ref'd)

9

(mem. op., not designated for publication) ("In order to constitute reasonable suspicion, the information need not be within the first-hand knowledge of the officer" as "[a] tip from a known informant may be sufficient."). Accordingly, the trial court did not err when it denied Trevino's motion to suppress. *See Wade*, 422 S.W.3 at 669. We overrule Trevino's sole issue.

### III.    CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
18th day of July, 2024.