PD-1419-15

PD-1419-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/4/2015 9:53:23 AM
Accepted 11/5/2015 1:56:48 PM
ABEL ACOSTA
CLERK

PD No. _____

# IN THE COURT OF CRIMINAL APPEALS
## AT AUSTIN, TEXAS

| | | |
|---|---|---|
| **ISRAEL JOE IBARRA,** | § | |
| **Appellant** | § | |
| | § | **CAUSE NO. 11-13-00325-CR** |
| **V.** | § | |
| | § | **TRIAL COURT NO. 6680** |
| **THE STATE OF TEXAS,** | § | |
| **Appellee** | § | |

## PETITION FOR DISCRETIONARY REVEW
## FROM THE ELEVENTH COURT OF APPEALS
## AT EASTLAND, TEXAS

### CHIEF JUSTICE JIM WRIGHT, PRESIDING

### PETITION OF PETITIONER (APPELLANT)

**COPELAND LAW FIRM**
**PO Box 399**
**Cedar Park, Texas 78613**
**Tel. 512-897-8196**
**Fax. 512-215-8144**

**TIM COPELAND**
**State Bar No. 04801500**
**Attorney for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

November 5, 2015

ABEL ACOSTA, CLERK

# TABLE OF CONTENTS

**Page**

**Table of Contents**

**Index of Authorities**

I. **Identity of Trial Court and Parties** 1

II. **Statement Regarding Oral Argument** 2

III. **Statement of the Case** 3

IV. **Statement of the Procedural History of the Case** 4

V. **Ground for Review** 4

    The Court of Appeals erred when, after its review of the facts concerning Mr. Ibarra's motion to suppress, it determined that there was sufficient evidence supporting the trial court's decision first, that a confidential informant was reliable and, second, that under the totality of circumstances, based upon corroboration of the informant's tip, an officer had reasonable suspicion to stop and detain a vehicle in which Mr. Ibarra was a passenger. *See* ***Smith v. State***, 58 S.W.3d 784 (Tex. App. – Houston [14th Dist.] 2001, *pet. ref'd*, and ***Brother v. State***, 166 S.W.3d 255, 259, n.5 (Tex. Crim. App. 2005); R.R. 2 (transcript of Ibarra's motion to suppress hearing, pp. 10-20).

VI. **Summary of the Argument** 4

VII. **Background and Statement of Pertinent Evidence** 5

VIII. **Court of Appeals' Decision** 8

*i*

**Page**

IX. **Argument**                                                              **9**

    **A.**    The Court of Appeals deviated from the norm in such a manner that a review of its opinion is required.

        (1)    The information from an informant on which Sheriff Stephens partially based his reasonable suspicion to stop a vehicle in which Ibarra was a passenger was, contrary to the Court of Appeals' holding, unreliable.

            (a)    There was no evidence that the informant's prior collaboration with the Sheriff involved criminal matters, or whether the information he had previously provided had resulted in criminal prosecutions, much less felony convictions.

            (b)    The informant did not provide any information concerning specifics of illegal drug activities or his familiarity with drug usage, manufacture or sale which would justify reliance on his information concerning same.

        (2)    The Sheriff failed to corroborate the information provided by his informant, in any meaningful way so the Court of Appeals could hardly rely on that corroboration to justify "reasonable suspicion" under a totality of the circumstances test.

            (a)    The Sheriff's "surveillance" of suspected illegal drug activity was woefully inadequate.

**Page**

        (b)    The surveillance was did not corroborate any of the informant's information in any meaningful way such that a reviewing court could find under a totality of the circumstances test, that the Sheriff had acted upon reasonable suspicion in stopping the suspect's car.

X.    **Prayer**         12

XI.    **Certificate of Service and Compliance with Rule 9**     13

# INDEX OF AUTHORITIES

**Page**

## United States Supreme Court cases

*Alabama v. White*     **12**
    496 U.S. 325 (1990)

*Terry v. Ohio*     **9**
    392 U.S. 1 (1968)

*United States v. Cortez*     **8**
    449 U.S. 411 (1981)

## Texas Courts of Criminal Appeal cases

*Arguellez v. State*     **8**
    955 S.W.2d 85 (Tex. Crim. App. 1997)

*Brother v. State*     **4, 12**
    166 S.W.3d 255 n.5 (Tex. Crim. App. 2005)

## Texas Courts of Appeal cases

*Smith v. State*     **4,8**
    58 S.W.3d 784 (Tex. App. – Houston [14th Dist.] 2001, *pet. ref'd*

## Statutes

**TEX. HEALTH & SAFETY §481.112(a), (d)(West 2010)**     **3**

## United States Constitution

**Fourth Amendment**     **8,12**

# I. IDENTITY OF TRIAL COURT AND PARTIES

## TO THE COURT OF CRIMINAL APPEALS:

**NOW COMES** Israel Joe Ibarra, appellant, who would show the Court that the trial court and interested parties herein are as follows:

**HON. SHANE HADAWAY**, Judge Presiding, 39th Judicial District Court, Haskell County, Texas.

**ISRAEL JOE IBARRA**, appellant, TDCJ No. 01539473, Beto Unit, 1391 FM 3328, Tennessee Colony, Texas 75880.

**LYNN INGALSBE**, trial attorney for appellant, 11065 S. 3rd St., Abilene, Texas 79602.

**TIM COPELAND**, appellate attorney for appellant, P.O. Box 399, Cedar Park, Texas 78613.

**MICHAEL FOUTS**, Haskell County District Attorney, trial and appellate attorney for appellee, the State of Texas, P.O. Box 193, Haskell, Texas 79521.

## II. STATEMENT REGARDING ORAL ARGUMENT

Appellant believes the clarity of the issue in this case is such that oral argument would add nothing.

# IN THE COURT OF CRIMINAL APPEALS
## AT AUSTIN, TEXAS

| | | |
|---|---|---|
| **ISRAEL JOE IBARRA,** | § | |
| Appellant | § | |
| | § | **CAUSE NO. 11-13-00325-CR** |
| **V.** | § | |
| | § | **TRIAL COURT NO. 6680** |
| **THE STATE OF TEXAS,** | § | |
| Appellee | § | |

## PETITION FOR DISCRETIONARY REVEW
## FROM THE ELEVENTH COURT OF APPEALS
## AT EASTLAND, TEXAS

## CHIEF JUSTICE JIM WRIGHT, PRESIDING

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS**:

## III. STATEMENT OF THE CASE

A jury found Israel Joe Ibarra guilty of possession of more than four grams but less than 200 grams of methamphetamine with intent to deliver. *See* **TEX. HEALTH & SAFETY §481.112(a), (d)(West 2010)**. The trial court assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice for a term of sixty (60) years.

## IV. STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

The Eleventh Court of Appeals at Eastland, Texas, by Opinion dated October 29, 2015, affirmed Ibarra's conviction and sentence. A copy of that opinion is hereto attached as if fully incorporated herein at length.

## V. GROUND FOR REVIEW

The Court of Appeals erred when, after its review of the facts concerning Mr. Ibarra's motion to suppress, it determined that there was sufficient evidence supporting the trial court's decision first, that a confidential informant was reliable and, second, that under the totality of circumstances, based upon corroboration of the informant's tip, an officer had reasonable suspicion to stop and detain a vehicle in which Mr. Ibarra was a passenger. *See **Smith v. State***, 58 S.W.3d 784 (Tex. App. – Houston [14th Dist.] 2001, *pet. ref'd*, and ***Brother v. State***, 166 S.W.3d 255, 259, n.5 (Tex. Crim. App. 2005); R.R. 2 (transcript of Ibarra's motion to suppress hearing, pp. 10-20).

## VI. SUMMARY OF THE ARGUMENT

When Sheriff Stephens stopped a vehicle in which Ibarra was a passenger, he did so lacking reasonable suspicion. Stephens testified that his stop was based solely on information provided by a confidential informant. Stephens did not, for example, observe any traffic violations; neither did he corroborate the informant's initial tip in any meaningful way. Because the informant was not shown to be reliable to any

degree of reasonable certainty, and because Stephens' corroboration was inadequate, under the totality of the circumstances, it follows that the stop was not justified. The trial court erred in holding otherwise after Ibarra's hearing on a motion to suppress. The Court of Appeals then compounded that error when it upheld the trial court's decision though there was a dearth of any meaningful testimony cited by the appellate court in its review.

## VII. BACKGROUND AND STATEMENT OF PERTINENT EVIDENCE

In a suppression hearing held prior to trial, the trial court heard evidence that about a month prior to Ibarra's arrest a confidential informant alerted then Sheriff David Haliburton that Jason Mendez was involved in narcotics trafficking in Haskell County. Haliburton passed that information to then Deputy Sheriff Winston Stephens who began sporadic surveillance of a house where Mendez stayed with his in-laws. (R.R. 2, pp. 11-12). Stephens said that his "surveillance" consisted of "some drive-ups" to Mendez's house, and he also testified that he "(sat) off at a distance somewhere and watch(ed) with binoculars." (R.R. 2, p. 12). Stephens testified that he was looking for "activities of what a normal drug house would be. You know, any vehicles leaving there, try to get a traffic stop in them." (R.R. 2, p. 12). He said that he "saw activity consistent with what his experience would be of narcotics" and that there was some "traffic going in and out." (R.R. 2, p. 13). Vehicles would "pull up, stay for a little while and leave occasionally," he said. (The

activity) wasn't "24/7." (R.R. 2, p. 13). Stephens offered that he never got any concrete information based on his surveillance and, notably, he never mentioned that Ibarra was ever observed during the surveillance. (R.R. 2, p. 13). Stephens also testified that during the time that he had Mendez under surveillance he heard from his own informant that Mendez was dealing drugs. (R.R. 2, p. 13). Stephens testified that he had known his informant for over ten years and that he had provided reliable information regarding criminal activity in the past. (R.R. 2, p. 14). Stephens sent him to make a "buy" from Mendez on December 27, 2012, but the buy fell through when the informant reported back to Stephens that Mendez was "out of dope." (R.R. 2, p. 15). The informant told Stephens that Mendez had to go to Abilene to "re-up" (or get more dope) before he could make a buy. (R.R. 2, p. 15). He also told Stephens that Mendez was leaving about 8 o'clock that night for Abilene to get more narcotics to sell but that he would return to Haskell about 9:00 or 9:30. He also told Stephens that Mendez did not have a driver's license. From surveillance of his house, Stephens said that he knew Mendez drove a small, silver Oldsmobile so he waited in his patrol car south of Haskell on Hwy. 277 that night for Mendez to make the trip. (R.R. 2, p. 16). Stephens said that he saw Mendez's pass him heading toward Stamford and Abilene, but he did not follow. (R.R. 2, p. 16). Instead, he said, he waited for Mendez to return around 9:00 or 9:30 that night, the time his informant had told him Mendez would be back. Stephens said that he waited until

about 9:15, and then he went to grab a sandwich. Ten to fifteen minutes later, when Stephens drove by Mendez's house, Mendez's car was already back at the residence. (R.R. 2, p. 17). Stephens said that he sent his informant back to Mendez for *another* dope buy the following day, December 28, but, again, the informant returned empty–handed. He told Stephens that Mendez had, again, "run out of dope." (R.R. 2, p. 18). However, his informant told him, Mendez had just left his home for Abilene again to get more dope, and, again, according to the informant, he would be back about 9:00 or 9:30 p. m.. (R.R. 2, p. 18). Stephens again set up station south of Haskell to intercept Mendez on his return. His informant told him the drugs would either be on Mendez or in the vehicle, Stephens testified, but he did not know who was with Mendez when he left for Abilene other than his girlfriend, Santana Guzman. (R.R. 2, p. 18). Stephens said that around 9:30 he saw the car Mendez was driving coming north on Hwy. 277 from the direction of Stamford and Abilene, and he fell in behind the vehicle. He ran the car's registration which came back to Adam Mendez, Jason's brother. (R.R. 2, p. 18). Stephens said that he could not tell who was driving the car or even who was in it when it passed him, but he engaged his overhead red and blue lights to pull the vehicle over. After it stopped, Stephens said that he identified the driver, Jason Mendez, who admitted that he did not have a license. (R.R. 2, pp. 20-21). Santana Guzman was the vehicle's front passenger; Ibarra was in the right back passenger's seat, and Essie Alvarez was seated  behind

the driver. (R.R. 2, p. 21). After everyone was removed from the car, Stephens asked Mendez if he had any narcotics which Mendez denied, and then Mendez gave Stephens permission to search the car. (R.R. 4, p. 43). When the search revealed illegal narcotics but no one in the car claimed ownership, Stephens said that he arrested everybody in the vehicle. (R.R. 2, pp. 23-24).

Stephens testified that he stopped Mendez's vehicle solely on the information provided by his confidential informant who had told him, "they would be hauling drugs back into Haskell." (R.R. 2, p. 32). Stephens said that he had not known who would be in the vehicle when he stopped it, and he had not seen any traffic violations to justify a stop. (R.R. 2, p. 33). He testified that the vehicle had been stopped, purely and simply, on the basis of what his informant had told him. (R.R. 2, p. 35).

## VIII. COURT OF APPEALS' DECISION

The Court of Appeals employed the correct standards for review of the trial court's decision denying Ibarra's motion to suppress evidence obtained in violation of the **Fourth Amendment**. *See e.g., Slip op.* at 9 citing ***Arguellez v. State***, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Similarly, in its analysis of the underlying circumstances of the search, the Court of Appeals correctly stated the basis for appellate assessment of an informant's reliability as well as the requisite corroboration needed in cases such as these. *Slip op*. at 11, citing ***Smith v. State***, 58 S.W.3d 784, 787 (Tex. App. – Houston [14th Dist.] 2001, *pet. ref'd*) citing ***United***

***States v. Cortez***, 449 U.S. 411, 417 (1981)) and ***Brother v. State***, 166 S.W. 3d 255,259 n. 5 (Tex. Crim. App. 2005). Finally, the Court of Appeals correctly noted that under ***Terry***[1] and its progeny, for such a stop to be justified, the officer must have reasonable suspicion under the totality of the circumstances to justify the stop. It correctly noted that reasonable suspicion exists only if the officer has specific, articulable facts that, when combined with their rational inferences, would lead the officer to reasonably conclude that a person is, has been, or will soon be engaged in criminal activity. *Slip op.* at 10.

## IX. ARGUMENT

Here, Ibarra takes issue, not with the jurisprudence underlying the rational for the Court of Appeals' decision, but with that court's application of the established case law in reaching its decision. It is in the review of the evidence adduced from Ibarra's motion to suppress hearing where the Court of Appeals deviated from the norm in such a manner that a review of its opinion is required.

The Court of Appeals noted, in determining that the trial court correctly ruled that Sheriff Stephens had a reliable informant, that the Sheriff had known the informant for twelve years. It also noted that the informant had given the Sheriff "reliable information related to criminal activity in the past." (*Slip op.* at 11).

---

[1] ***Terry v. Ohio***, 392 U.S. 1, 30-31 (1968).

However, that was the sum total of the evidence adduced as the basis for the Sheriff's reliance upon his informant. There was no evidence cited, for example, that the Sheriff had ever relied on his informant in the past to justify criminal arrest; certainly no evidence that any information the Sheriff had ever received from the informant had ever resulted in felony *convictions*. In fact, Sheriff Stephens did not testify what kind of "criminal" information the informant had provided in the past, and he did not testify that any information his informant had provided in the past had anything to do with illegal narcotics trafficking.

While Stephens said his informant told him Mendez (the driver of the vehicle in which Ibarra was a passenger when it was stopped) was dealing drugs, the informant did not provide *any* details supporting that accusation. Moreover, while Stephens testified that he had sent his informant into the home to buy narcotics from Mendez, the informant did not tell Stephens how, when or where he had witnessed Mendez dealing drugs nor did he offer any other evidence that supported his accusations that Mendez was a drug dealer. Neither does the record reflect that the informant had any knowledge about methamphetamine in general or even such familiarity with the drug that he would recognize it if he saw it. Stephens did not testify that his informant observed anyone in the home in possession of any illegal narcotic. Neither did the informant identify any participants of Mendez's illegal drug operation, and he certainly did not say that Ibarra was part of any such

operation. The record is also silent on whether the informant named anyone else in the home as a customer for the narcotic, and, finally, the informant did not observe any illegal drug use in the home. In sum, in the Court of Appeals' review supporting the trial court's findings, the Court fails to cite the kind of facts necessary to affirm that finding because those facts were absent from the record reviewed. (*See Slip op.* at 11).

Ignoring the Court of Appeals' conclusion supporting the trial court's finding that the informant's tip was reliable, the Court's review of the evidence concerning the Sheriff's efforts to corroborate the tip was also inadequate. Evidence relied upon by the trial court and, in turn, by the appellate court in its review fell woefully short of that needed for corroboration. By his own testimony, the Sheriff's efforts to corroborate the tip consisted of sporadic and cursory "surveillance" of the house where Mendez lived. (Sheriff Stephens said his surveillance basically consisted of watching the house from a distance a few times with binoculars). (R.R. 2, p. 12). Stephens said he observed "traffic going in and out" of the house, whatever that means. But, Stephens nevertheless concluded from his observations that the traffic was consistent with "what a normal drug house would be" without providing any details to support that conclusion. (R.R. 2, pp. 12-13). He admitted, for example, that he never got any concrete information based on his surveillance except for the type of car Mendez usually drove (which anyone familiar with Mendez in a small

town such as Haskell, including an informant, could have known from even casual observation). (R.R. 2, p.13). The Court of Appeals' opinion also relates, in supporting the trial court's determination, that the informant also provided testimony on Mendez's southbound travel routes and times when Mendez left his home to secure illegal drugs to sell. Again, that testimony, in context, does little to corroborate the informant's initial tip. Evidence showed that Mendez's had family members who lived south of the home Stephens had surveilled so there was another reasonable explanation for his southbound travel. Despite such inadequacies in the record the Court of Appeals determined, in its review, that the tip was nevertheless corroborated.

As correctly noted by the Court of Appeals at p. 12 of its opinion, "… corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and temporary detention is thus justified." ***Brother v. State***, 166 SW.3d 255, 259, n.5 (Tex. Crim. App. – 2005) (citing ***Alabama v. White***, 496 U.S. 325, 330-31 (1990)). Here, the trial court erred in finding that the informant was reliable or that there were sufficient facts to corroborate the unreliable informant's tip. The Court of Appeals in its review of that decision then compounds that error when it finds support for the trial court despite the dearth of justifiable evidence to do so. In so doing, the Court of Appeals joins the trial court in its erroneous application of the

pertinent case law employed to establish reliability of informants and sufficiency of requisite corroboration of their tips. It is the Court of Appeals deviation from the norm in its review of the trial court's decision that justifies this petition as well as the reversal of the appellate opinion itself.

## X. PRAYER

**WHEREFORE**, Mr. Ibarra prays that this Court reverse the judgment of the appellate court and render a judgment of acquittal for violation of Ibarra's **Fourth Amendment** guarantees, or, in the alternative, remand for such other and further relief to which he is entitled.

**COPELAND LAW FIRM**
P.O. Box 399
Cedar Park, TX 78613
Mobil/Text: 512.897.8196
Fax: 512.215.8114
Email: tcopeland14@yahoo.com

By: /s/ Tim Copeland
Tim Copeland
State Bar No. 04801500
Attorney for Appellant

## XI. CERTIFICATE OF SERVICE AND OF COMPLIANCE WITH RULE 9

This is to certify that on November 3, 2015, a true and correct copy of the above and foregoing document was served on the State Prosecuting Attorney, PO Box 12405, Capitol Station, Austin, TX 78711, and on Michael Fouts, Haskell County District Attorney P.O. Box 193, Haskell, Texas 79521 in accordance with the Texas Rules of Appellate Procedure, and that the Petition for Discretionary

Review is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains 2846 words.

/s/ Tim Copeland
Tim Copeland



11TH COURT OF APPEALS
EASTLAND, TEXAS
JUDGMENT

Israel Joe Iba1Ta,                           *  From the 39th District
                                                Court of Haskell County,
                                                Trial Court No.  6680.


Vs. No.  11-13-00325-CR                      *  October 29, 2015


The  State of Texas,                         *  Opinion by Bailey, J.
                                                (Panel consists of: Wright, C.J.,
                                                Willson,  J., and Bailey, J.)


    This court has inspected the record in this cause and concludes   that there is no e1Tor in the judgment below. Therefore, in accordance with this court's opinion, the judgment of the trial court is in all things   affirmed.



In The

# Eleventh Court of Appeals,.

———————

## No. 11-13-00325-CR

———————

## ISRAEL JOE IBARRA, Appellant

## V.

## THE STATE OF TEXAS, Appellee   .

On Appeal from the 39th District Court

Haskell County, Texas

Trial Court Cause No. 6680

## O P I N I O N

The jury convicted Israel Joe Ibarra of possession of more than four grams but less than 200 grams of methamphetamine with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). The trial court assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of sixty years. Appellant challenges his conviction in three issues.  We affirm.

*Background Facts*

Haskell County Sheriff Winston Stephens[1] testified at both the suppression hearing and during trial that he received information from his predecessor, Sheriff David Halliburton, that a confidential informant told Sheriff Halliburton that Jason Mendez was dealing drugs in Haskell County. In response to Sheriff Halliburton's repo1i, Sheriff Stephens set up surveillance on Mendez's house for approximately a month. Sheriff Stephens then received information from his own confidential informant that Mendez was dealing drugs. Sheriff Stephens testified that he had known his confidential informant for approximately twelve years. The confidential informant had given Sheriff Stephens reliable information related to criminal activity in the past. Sheriff Stephens also testified· that the confidential info1mant had never given him information that was not reliable.

At Sheriff Stephens's request, the confidential informant attempted to buy drugs from Mendez on December 27, 2012, but Mendez was out of drugs that day. The confidential informant told Sheriff Stephens that Mendez would be going to Abilene that evening to "re-up his dope." The confidential informant said that Mendez would be traveling northbound in a silver car with a Dallas Cowboys star on the back windshield.

Sheriff Stephens observed Mendez leaving for Abilene at the time that the confidential informant told him that Mendez would be leaving Haskell. Sheriff Stephens attempted to intercept Mendez on his return to Haskell on December 27, but he missed seeing Mendez's vehicle return that evening. Sheriff Stephens testified that the confidential informant told him that Mendez would be leaving for Abilene to purchase more drugs the next evening (December 28) and would return to Haskell between 9:00 p.m. and 9:30 p.m. The

---

[1]Sheriff Stephens was the chief deputy at the time of the incident.

2

confidential informant also told Sheriff Stephens that Santana Guzman would be in the vehicle with Mendez.

On the evening of December 28, Sheriff Stephens saw a silver Oldsmobile with a star on the back driving toward Haskell. Sheriff Stephens started driving behind the car. A check of the vehicle's registration information indicated that the car belonged to Mendez's brother. Sheriff Stephens activated his emergency lights and pulled the car over. Mendez was driving, Guzman was in the front passenger seat, Essie Alvarez was in the backseat behind the driver, and Appellant was in the backseat behind Guzman. Sheriff Stephens instructed Mendez to exit the vehicle and asked for his driver's license. Mendez replied that he did not have his license. Sheriff Stephens asked for permission to search the vehicle and Mendez consented. All of the occupants then exited the vehicle.

Sheriff Stephens, along with another officer, searched the vehicle. Sheriff Stephens testified that the car smelled of burnt marihuana. Inside the vehicle, the officers found an open box that contained a small amount of marihuana, two marihuana pipes with marihuana residue, and rolling papers. They also found digital scales on the front floorboard. The officers found, on the front driver's side above the door, a small scooper that is used to bag drugs.

Sheriff Stephens spoke with Guzman separately from the group. Guzman admitted that she had contraband on her person and retrieved a small bag from inside .her pants. Inside the bag were several baggies, a small blue flashlight, and a small container of marihuana. Inside the baggies was an off-white, crystal-type substance. This substance was later tested and determined to be a total of 1.01 grams of methamphetamine.

All of the occupants were arrested for drug possession. Appellant did not have any identification on him, and he gave a false name when he was arrested. The car was impounded and searched again the next day. In the subsequent search;

Sheriff Stephens found a small, soft-sided bag wedged between the backseat and the body of the vehicle on the driver's side. Sheriff Stephens also found another portion of a marihuana clip. Inside the soft-sided bag were Ziploc baggies that contained more off-white, crystal-type substance. The contents were tested and determined to be a total of 3.09 grams of methamphetamine.

*Analysis*

We first address Appellant's sufficiency issues. Appellant challenges the sufficiency of the evidence in his second and third issues. We review sufficiency of the evidence issues under the standard of review set forth in *Jackson v. Virginia,* 443 U.S. 307 (1979). *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State,* 337 S.W.3d 286, 288-89 (Tex. App. Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at 319; *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, .including pieces of evidence that may have been improperly admitted. *Winfrey v. State,* 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks,* 323 S.W.3d at 899. This standard accounts for the factfinder' s duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319; *Clayton,* 235 S.W.3d. at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson,* 443 U.S. at 326; *Clayton,* 235 S.W.3d at 778.

4

In his second issue, Appellant asserts that the evidence was insufficient to supp01i his conviction for possession with intent to deliver any of the methamphetamine. He contends that the State only showed that he was in close proximity to the drugs because they were located in a car in which he was a passenger. He also asserts that only an accomplice witness testified that he knew about the methamphetamine and its purpose. In this regard, Appellant contends that the accomplice's testimony was not corroborated by any independent evidence. In his third issue, Appellant contends that the evidence was insufficient to prove the amount of methamphetamine for which he was convicted. Appellant challenges the amount the State linked him to and argues that the evidence proven by the State amounts to less than four grams. Specifically, he asserts that there is insufficient evidence linking him to the methamphetamine recovered from Guzman's pants.

When, as in this case, the jury's verdict could have been based on the testimony of an accomplice, the sufficiency review must incorporate the accomplice witness rule stated in Article 38.14 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). In order to support a conviction based upon the testimony of an accomplice, there must be corroborating evidence that tends to connect the accused with the offense. *Id.; Malone v. State,* 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). In reviewing the sufficiency of the corroborating evidence, we eliminate the accomplice testimony from consideration and focus on the remaining portions of the record to determine whether there is any evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State,* 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Cathey v. State,* 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999). The corroborating evidence may be direct or circumstantial and need not be sufficient by itself to establish the defendant's guilt; it is sufficient if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense. *Solomon,* 49 S.W.3d at 361; *Gosch v. State,*

5

829 S.W.2d 775, 777 (Tex. Crim. App. 1991). We review the c01Toborating evidence in the light most favorable to the verdict. *Taylorv. State,* 328 S.W.3d'574, 578 (Tex. App.-Eastland 2010, pet. ref d). Once corroborated, testimony of an accomplice may be considered by the jury in the· same manner as any other competent evidence. *See Herron v. State,* 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). ·

Non-accomplice testimony was introduced showing that Appellant was in the back passenger seat near the location of the methamphetamine, that the car smelled of burnt marihuana, that marihuana was in plain view in the vehicle, that digital scales and rolling papers were also found in plain view, that the vehicle matched the description given to Sheriff Stephens by the confidential informant, and that the confidential informant told Sheriff Stephens that the driver of the vehicle was bringing chugs back from Abilene. In this case, the jury could have rationally found that the corroborating evidence tended to connect Appellant to the possession of the methamphetamine. *Malone,* 253 S.W.3d at 258-59; *Woodruff v. State,* No. 11-09-00171-CR, 2011 WL 2671926, at *2 (Tex. App.-Eastland July 7, 2011, no pet.) (mem. op., not designated for publication). Therefore, we consider the accomplice witness testimony in conducting our review of the sufficiency of the evidence.

In cases involving unlawful possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the substance and that the accused knew that the matter possessed was contraband. *Brown v. State,* 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Martin v. State,* 753 S.W.2d 384 (Tex. Crim. App. 1988). When the accused is not shown to have had exclusive possession of the place where the contraband· was found, the evidence must link the accused to the contraband and establish that the accused's connection with the chug was more than fortuitous. *Evans v. State,* 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006); *Pollan v. State,* 612 S.W.2d 594 (Tex. Crim. App. [Panel

6

Op.] 1981). Alvarez, an accomplice, testified .that Appellant handed her a small bag that contained a portion of the methamphetamine and told her to "get lid of it." Alvarez then stuffed the bag behind her in the backseat of the vehicle. From this evidence, the jury could have determined beyond a reasonable doubt that Appellant exercised care, custody, control, or management over the methamphetamine found in the bag that Alvarez stuffed behind her in the backseat of the vehicle and that he knew the substance was contraband. *See Woodruff,* 2011 WL 2671926, at *2.

We next address the methamphetamine found on Guzman. We consider several non-exclusive factors when determining whether there are affirmative links between the accused and the controlled substance: (1) the accused's presence when the search was executed; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the contraband; (4) whether the accused was under the influence of a controlled substance when he was arrested; (5) whether the accused possessed other contraband when he was arrested; (6) whether the accused made incriminating statements; (7) whether the accused attempted to flee; (8) whether he made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans,* 202 S.W.3d at 162 n.12.

Guzman admitted that she had contraband on her person and retrieved a small bag from inside her pants. Inside the bag were several baggies, a small blue flashlight, and a small container of marijuana. The back to the flashlight was found in the back floorboard, near where Appellant had been sitting. Furthermore, the

7

baggies retrieved from Guzman's person were similar in make and size to the baggies recovered from the bag stuffed in the backseat of the vehicle.

Intent to deliver may be proven by circumstantial evidence. Coutts have considered several factors in determining intent, including the quantity of drugs the defendant possessed, the manner of packaging of the drugs, and the presence or absence of drug paraphernalia for use or sale. *See Brown v. State,* 243 S.W.3d 141, 149-50 (Tex. App.-Eastland 2007, pet. ref d); *Jordan v. State,* 139 S.W.3d 723, 726 (Tex. App.-Fort Worth 2004, no pet.). Here, Appellant was present when the drugs were found on Guzman, the packaging of the chugs found in the backseat was similar to the drugs found on Guzman, and there were baggies and scales in the car (which are indicative of intent to deliver). From this evidence, the jury could have determined beyond a reasonable doubt that Appellant exercised care, custody, control, or management over the methamphetamine found on Guzman's person and that he knew the substance was contraband.

In conside1ing the factors listed above, we find that the evidence shows that Appellant was present when the search was executed, that he was in close proximity to and had access to the methamphetamine, that the place in which the drugs were found was enclosed, and that Appellant gave a false name when he was arrested. *See Felder v. State,* 848 S.W.2d 85, 98 (Tex. Crim. App. 1992) (giving false identification to a police officer indicates a consciousness of guilt). The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. CRIM. PROC. art. 36.13 (West 2007), 38.04 (West 1979). As such, the jury was entitled to accept or reject any oral) of the testimony of any witness. *Adelman v. State,* 828 S.W.2d 418, 421 (Tex. C1inl. App. 1992). In addition, the jury was entitled to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a

reasonable . doubt that Appellant intentionally or knowingly possessed methamphetamine in an amount of more than four grams. We ovenrule Appellant's second and third issues.

In his first issue, Appellant argues that the trial court erred when it denied his motion to suppress. Specifically, Appellant challenges Sheriff Stephens's basis for initiating the traffic stop. He contends that the warrantless stop and subsequent · search of the vehicle was not based on reasonable suspicion because the "confidential informant's information which led to the stop and search was not reliable." Appellant also contends that Sheriff Stephens did not testify as to any details that support the informant's information that Mendez was "dealing drugs."

A trial court's denial of a motion to suppress is reviewed for an abuse of discretion. *Arguellez v. State,* 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We review a trial court's ruling under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Almost complete deference is given to its determination of historical facts, especially if those facts are based on an assessment of credibility and demeanor. *Crain v. State,* 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Amador,* 221 S.W.3d at 673 (citing *Guzman,* 955 S.W.2d at 89). We review de novo a trial court's application of the law to the facts. *Wade v. State,* 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex. Crim. App 2010). Regardless of whether the trial court granted or denied the motion, appellate courts view the evidence in the light most favorable to the ruling. *Wade,* 422 S.W.3d at 666; *State v. Woodard,* 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). We will uphold the trial court's ruling if it is reasonably grounded in the record and correct on any theory of law applicable to the case. *Wade,* 422 S.W.3d at 667; *Valtierra,* 310 S.W.3d at 447-48. When the trial court does not issue findings of fact, we imply

findings that support the trial court's ruling if the evidence supports those findings. *State V. Kelly,* 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006).

There are three distinct types of police-citizen interactions: (l) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited duration and scope, which must be. supplied by reasonable suspicion of criminal activity; and (3) arrests that are reasonable only if supported by probable cause. *Wade,* 422 S.W.3d at 667; *Woodard,* 341 S.W.3d at 410-11 (citing *Florida v. Bostick,* 501 U.S. 429, 434 (1991); *Terry v. Ohio,* 392 U.S. 1, 30-31 (1968); *Gerstein v. Pugh,* 420 U.S. 103, 111-12 (1975)). A detention occurs when a reasonable person, taking into account all circumstances, feels they are not at liberty to ignore the police and go about their business. *Kaupp v. Texas,* 538 U.S. 626, 629 (2003) (quoting *Bostick,* 501 U.S. at 437). There is no dispute that Sheriff Stephens conducted an investigative detention for purposes of the Fourth Amendment when he stopped Mendez's car.

A police officer may briefly detain a person to investigate possible criminal activity, even if there is no probable cause, if the officer has reasonable suspicion to believe there is possible criminal activity. *Terry,* 392 U.S. at 22; *Ford v. State,* 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The stop must be justified, and the scope must be reasonably related to the circumstances justifying the stop. *Terry,* 392 U.S. at 20. A police officer has reasonable suspicion if he has specific, articulable facts that, when combined with their rational inferences, would ·lead the officer to reasonably conclude that a person is, has been, or soon will be engaged in criminal activity. *Ford,* 158 S.W.3d at 492. This is an objective standard that ignores the subjective intent of the officer and looks at whether there is an objective reason for the detention. *Wade,* 422 S.W.3d at 668. Courts determine reasonable suspicion under the totality of the circumstances. *Id.* Individual circumstances may seem innocent enough in isolation, but if the circumstances combine to reasonably suggest

10

the imminence of criminal conduct, an investigative detention is justified. *Id.; Ford,* 158 S.W:3d at 492.

Appellant argues that Sheriff Stephens lacked reasonable suspicion when he stopped the vehicle. In this regard, Sheriff Stephens testified that he relied solely on the information provided by his confidential informant in making the decision to stop the vehicle rather than observing any traffic violations. Appellant contends that the totality of the circumstances did not rise to a level of reasonable suspicion based on the confidential informant's report and Sheriff Stephens's independent observations. We disagree.

Sheriff Stephens testified that he acted in response to his confidential inf01mant's information about Mendez trafficking drugs. As noted previously, the identity of the confidential informant was known to Sheriff Stephens. Sheriff Stephens testified that he had known the inf01mant for approximately twelve years, that he had given Sheriff Stephens reliable information related to criminal · activity in the past, and that he had never given him information that was not reliable.

In situations involving the police's use of an informant, we consider the informant's reliability in analyzing the totality of the circumstances. *Smith v. State,* 58 S.W.3d 784, 789 (Tex. App.-Houston [14th Dist.] 2001, pet. ref d) (citing *United States v. Cortez,* 449 U.S. 411, 417 (1981)). "A confidential informant can provide the requisite reasonable suspicion to justify an investigative detention so long as additional facts are present to demonstrate the informant's reliability." *Id* . . at 790. Although an unverified tip might not provide enough support to justify an arrest or the issuance of a warrant, ltwill be sufficient to justify an investigative stop if it is made by a known informant who has provided information in the past. *Adams v. Williams,* 407 U.S. 143, 146-47 (1972) (explaining that information obtained from an informant who has been used before is stronger than an anonymous. tip).

The confidential informant contacted Sheriff Stephens and told him that· Mendez was dealing chugs from his Mendez's mother's residence. Sheriff Stephens witnessed several vehicles come and go from the residence, and he testified that the behavior was consistent with "what a normal drug house would be." Additionally, Sheriff Stephens had worked with the confidential informant in the past several years, and the confidential informant's information had proven reliable in the past. This testimony from Sheriff Stephens established the confidential informant's reliability.

Furthermore, the confidential informant provided Sheriff Stephens with information about Mendez leaving for Abilene to purchase more drugs the next evening and returning around 9:30 p.m. The confidential informant told Sheriff Stephens that Mendez would be traveling n01ihbound in a silver car. Sheriff Stephens stopped Mendez in a silver car, traveling northbound from Abilene, around 9:30 p.m. This testimony served to corroborate the veracity of the informant's information. Mendez arrived in the vehicle described by the informant, at the time and place provided by the informant. Corroboration does not mean that Sheriff Stephens must personally observe the conduct that caused him to reasonably suspect that a crime is being, has been, or is about to be committed. *Brother v. State,* 166 S.W.3d 255, 259 n.5 (Tex. Crim. App. 2005) (citing *Adams,* 407 U.S. at 147). "Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* (citing *Alabama v. White,* 496 U.S. 325, 330-31 (1990)).

Based on the totality of the circumstances, we find that Sheriff Stephens had reasonable suspicion to initiate the traffic stop of the vehicle. In light of the . testimony presented during the suppression hearing, which · indicated that the confidential informant had a track record of providing reliable information in the

past, as well as the details of Mendez's conduct that Sheriff Stephens corroborated, we cannot conclude that the trial court abused its discretion by denying Appellant's motion to suppress. *See Smith,* 58 S.W.3d at 790 (explaining that testimony regarding confidential informant's "track record" for "providing credible information in the past" can provide additional facts needed to establish reasonable suspicion through confidential informant's tip); *see also Adams,* 407 U.S. at 144-47 (determining that sufficient indicia of reliability were present when officer knew informant and when informant had previously given officer reliable information). We overrule Appellant's first issue.

*· This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

JUSTICE

October 29, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Wilson, J., and Bailey, J.

13