# NO. 12-19-00377-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS,*<br>*APPELLANT* | § | *APPEAL FROM THE 258TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *GEORGIA DONNELL,*<br>*APPELLEE* | § | *TRINITY COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

The State of Texas appeals the trial court's order granting Georgia Donnell's motion to suppress evidence. The State presents two issues for our consideration. We affirm.

### BACKGROUND

On November 28, 2018, a confidential informant (CI) contacted Jeremy Alexander, a sergeant and narcotics investigator with the Trinity County Sheriff's Office (TCSO). The CI told Alexander that she could purchase methamphetamine from Appellant. On November 29, Alexander stopped Appellant while she was driving a vehicle in Trinity County, Texas and subsequently arrested her for possession of less than a gram of methamphetamine. Appellant was later indicted for possession of methamphetamine, in an amount of less than one gram, with the intent to deliver.[1] Appellant filed a motion to suppress the methamphetamine Alexander seized from her person and the oral statements she made to Alexander.

At the suppression hearing, Alexander testified regarding the operation and the details surrounding Appellant's arrest. Tommy Park, chief deputy of TCSO, assisted Alexander with the operation and testified at the hearing. The facts concerning Alexander's investigation and

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. art. 481.112(a), (b) (West 2017).

Appellant's arrest will be discussed in more detail below, but, for context, a brief summary follows.

On November 29, the CI informed Alexander that Appellant was text messaging Appellant's methamphetamine supplier from the CI's phone. The CI told Alexander that Appellant would soon drive to Onalaska, Texas in a blue truck to purchase methamphetamine. Onalaska is a town located in neighboring Polk County. Alexander and Park, who was familiar with Appellant because she had rented property from him in the past, parked their car in the parking lot of a bar near the county line separating Trinity County and Polk County. Alexander and Park observed Appellant travel past them in a blue truck in the direction of Onalaska and subsequently return past them several minutes later. Alexander testified that the CI told him that Appellant was unable to purchase methamphetamine on this attempt. The CI told Alexander that Appellant was attempting another buy in Onalaska via another supplier. Again, Alexander and Park observed Appellant drive towards Onalaska and return. This time, Alexander was informed by the CI that Appellant had purchased methamphetamine. Alexander pulled Appellant over and asked her to step out of the vehicle. Alexander asked Appellant to place her arm behind her back and read her the statutory warnings required by the code of criminal procedure.[2] Alexander asked Appellant where the drugs were located, and she admitted that she had methamphetamine in her pocket. At the hearing, Alexander testified that the CI sent him screenshots of the text messages purportedly between Appellant and the supplier prior to him stopping Appellant. However, on cross examination, Alexander acknowledged he did not state in his report that he had screenshots of the text messages, and had, in fact, stated therein that the CI would provide him with a copy of the text messages at a later date.

At the suppression hearing, Appellant argued that her statements and the methamphetamine found on her person should be suppressed because Alexander did not have reasonable suspicion to stop her vehicle. The State argued that the CI's information provided Alexander reasonable suspicion to detain her because the information provided by the CI was corroborated by Alexander's observations. The trial court granted Appellant's motion to suppress and entered findings of fact and conclusions of law. This appeal by the State followed.

---

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2018).

In its first issue, the State argues that the trial court abused its discretion in granting Appellant's motion to suppress because it contends Alexander had reasonable suspicion to stop Appellant, given that the information the CI provided to Alexander was corroborated and reliable. Appellant counters that the information provided by the CI was both unreliable and uncorroborated and did not meet the legal protections for either reasonable suspicion or for probable cause to make an arrest. Appellant also points out that Alexander did not conduct an investigatory stop, but instead stopped her for the sole purpose of arresting her based on the information provided by the CI.

In its second issue, the State argues that the trial court erred in suppressing the statements Appellant made to Alexander because Alexander read Appellant her *Miranda* warnings. Appellant responds that the trial court correctly suppressed both her statements and the methamphetamine because they were obtained as a result of an illegal detention.

## Standard of Review and Applicable Law

We apply a bifurcated standard of review when reviewing a trial court's ruling on a motion to suppress. *See State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Under this standard, we give almost complete deference to the trial court's determination of historical facts, especially if those determinations are based on an assessment of a witness's credibility and demeanor. *Id.* A trial judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted, as the trial judge observes firsthand the demeanor and appearance of a witness, as opposed to an appellate court, which can only read an impersonal record. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We give the same deference to the trial court with respect to its rulings in applying the law to the facts, and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of a witness's credibility and demeanor. *See Martinez*, 570 S.W.3d at 281; *see also State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011) (the trial judge's determination of facts—if supported by the record—is afforded almost total deference when reviewing a suppression motion ruling). We therefore review those determinations for an abuse of discretion. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). However, for mixed questions of law and fact that do not turn on a witness's credibility or demeanor, as well as for purely legal questions, we conduct a de novo review. *See Martinez*, 570 S.W.3d at

281; *see also Woodard*, 341 S.W.3d at 410 (questions of law and fact that do not turn on credibility or demeanor and purely legal questions are reviewed de novo).

When, as here, the trial court makes specific findings of fact, we determine whether the evidence supports the fact findings when viewed in the light most favorable to the trial court's ruling. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *See State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Turrubiate*, 399 S.W.3d at 150.

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id.* Once the defendant has made this showing, the burden of proof shifts to the State where it is required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.*

The Fourth Amendment forbids unreasonable searches and seizures by government officials. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). It is the State's burden to establish the existence of probable cause to justify a warrantless arrest or search. *Amores v. State,* 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). An officer may conduct a warrantless search of a motor vehicle if the officer has probable cause to believe the vehicle contains evidence of a crime. *Powell v. State,* 898 S.W.2d 821, 827 (Tex. Crim. App. 1994). Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found. *Parker v. State,* 206 S.W.3d 593, 597 (Tex. Crim. App. 2006) (internal quotations omitted). Known facts and circumstances include those personally known to the officer or those derived from a "reasonably trustworthy" source. *Wiede,* 214 S.W.3d at 24. An "arrest" under the Fourth Amendment is a greater restraint upon one's freedom to leave or move than is a temporary detention, which also restrains one's freedom. *State v. Sheppard*, 271 S.W.3d 281, 290 (Tex. Crim. App. 2008). Although the law provides no precise rule to distinguish between a temporary detention and an arrest, Texas courts have generally considered several factors including the amount of force displayed, the duration of the detention, the efficiency of the investigative process and whether it was conducted at the

original location or the person was transported to another location, the officer's expressed intent—that is, whether the officer told the detainee that the detainee was under arrest or was being detained only for a temporary investigation, and any other relevant factors. *Scott v. State*, 572 S.W.3d 755, 761 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

The "totality of the circumstances" approach applies to appellate review of probable cause for warrantless searches. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). Under the totality of the circumstances approach, an informant's veracity, reliability, and basis of knowledge are all highly relevant in determining the value of a tip. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527 (1983). These elements are closely intertwined issues that may usefully illuminate the commonsense, practical question of whether there is probable cause to believe that contraband or evidence is located in a particular place. *Id.* Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity. *Eisenhauer v. State*, 678 S.W.2d 947, 954 (Tex. Crim. App. 1984), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) (quoting *Gates*, 462 U.S. at 243 n.13, 103 S. Ct. 2317).

Information from an unnamed informant alone does not establish probable cause, the informant's tip along with independent police investigation may provide a substantial basis for finding probable cause. *Whaley v. State*, 686 S.W.2d 950, 950–51 (Tex. Crim. App. 1985). In situations involving the police's use of an informant, we consider the informant's reliability in analyzing the totality of the circumstances. *Smith v. State*, 58 S.W.3d 784, 789 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd) (citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981)). "A confidential informant can provide the requisite reasonable suspicion to justify an investigative detention so long as additional facts are present to demonstrate the informant's reliability." *Smith*, 585 S.W.3d at 790. Although an unverified tip might not provide enough support to justify an arrest or the issuance of a warrant, it will be sufficient to justify an investigative stop if it is made by a known informant who has provided information in the past. *Adams v. Williams*, 407 U.S. 143, 146–47, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612 (1972) (explaining that information obtained from an informant who has been used before is stronger than an anonymous tip). But tips from anonymous or first-time confidential informants of unknown reliability must be coupled with facts from which an inference may be

drawn that the informant is credible or that his information is reliable. ***State v. Duarte***, 389 S.W.3d 349, 358 (Tex. Crim. App. 2012).

**Analysis**

It is undisputed that the informant who provided the information to Alexander was untested. Thus, the issue in this case is whether the information the CI provided was sufficiently corroborated to justify Alexander stopping Appellant. The trial court made the following factual findings that are pertinent to our inquiry:

> Sergeant Alexander had never worked with the confidential informant (CI).
>
> Sergeant Alexander had never met the confidential informant.
>
> Sergeant Alexander had never seen the CI with the defendant.
>
> Sergeant Alexander could not say that the CI had been reliable in the past.
>
> Sergeant Alexander admitted the CI had a drug criminal history and had left the State of Texas.
>
> Sergeant Alexander never saw the CI with the defendant on the date of the offense or at any other time.
>
> Sergeant Alexander said he received copies of the text messages from the Confidential Informant, after he arrested Defendant, that were text messages from Defendant to the alleged supplier. He did not receive the text messages to his phone. He could not say who was actually sending the text messages.
>
> Sergeant Alexander did not actually see a copy of the texts until after he arrested Defendant.
>
> Sergeant Alexander did not see the Defendant at a location she allegedly was picking up drugs in Onalaska, Texas.
>
> The text messages have a phone number but do not have identifying telephone numbers, who is texting whom, or a time stamp.
>
> Sergeant Alexander did not stop the defendant for a traffic violation, did not actually see the defendant with drugs, did not know who was actually doing the text messages, had never met the CI or used her as a CI before.
>
> Sergeant Alexander stopped the defendant when she crossed the Trinity County line and she had committed no traffic violation and was not seen with drugs in plain view.
>
> The defendant was not stopped in a high crime area where there was previous criminal activity afoot.
>
> Sergeant Alexander stops the defendant and reads her the Miranda warnings.
>
> Defendant states the truck is her son-in-law's truck.
>
> Sergeant Alexander's "consent" to search resulted from the following exchange between Sergeant Alexander and Defendant:

Alexander: You're going to cooperate with me or you're going to make me do this the hard way, all right? You got the dope. It's either in the truck or it's on your person. I'm either going to have a female come out here and search you or you can just hand it over and tell me the truth?

Defendant: I don't have any dope. I'm working right up the road –

Alexander: Georgia, listen to me, all right? Buddies over in Polk County - Don -- we know all about this, okay? So here's the deal, listen -- look. I'm only going to give you one opportunity to tell me the truth. I've already got probable cause to search your truck. So listen to me: If you make me tear that truck apart and you make me work for it, I'm not going to work with you at all, all right? I'm trying to give you the opportunity to tell me the truth and just hand it over. It's a lot easier that way. I promise you.

Defendant then admitted that she had drugs in her pocket.

A small amount of drugs was found on Defendant's person.

…

When first asked about whether the CI and Appellant had a relationship, Alexander testified "I believe so." Then upon questioning by the State, he added that the CI and Appellant were co-workers. There was no other evidence presented to support this statement or to explain the relationship between the C.I. and Appellant.

Alexander testified that the CI informed him that there was supposed to be a drug buy between her and Appellant that day in Onalaska, Texas and that he continued to keep in touch with the C.I. To support that, Alexander offered that the only evidence he had was "[s]ome text messages." The text messages presented by the State did not have a phone number or other clearly identifying information on them. Alexander testified he did not know who was actually doing those text messages. These were screenshots of messages that the CI claimed to receive from Donnell and they were not messages to Alexander. Alexander testified that he was not sure why he put in his report that he did not get the texts until after the traffic stop. There were material differences in the testimony and the Court finds that the testimony that Alexander had text messages before the traffic stop was not clearly supported by the evidence. The Court also sustained an objection to the admission of the screenshot text messages as an exhibit.

Alexander saw Donnell coming to and from Onalaska in a blue truck. The time between these events was approximately 25 minutes.

Alexander did not observe Donnell stop anywhere in Onalaska and did not witness a drug buy.

Alexander testified that the CI informed him that Donnell could not get the drugs from her primary supplier and a hearsay objection was sustained. Alexander testified that the screenshots of the text messages related that Donnell eventually made a drug deal. There were material differences in the testimony about whether Alexander received the screenshot messages before the traffic stop; therefore the Court finds that the testimony is not supported by the evidence.

…

Alexander credibly testified that the CI then advised him that Donnell was able to make a deal to purchase methamphetamine from another source.[3]

---

[3] Upon sequential motions by the State and orders from this Court, the trial court entered three separate written findings of fact and conclusions of law on November 15, 2019, March 18, 2020, and August 7, 2020. *See*

The State argues that CI's information coupled with Alexander's observations provided reasonable suspicion for Alexander to stop Appellant. The State goes on to argue that "[t]he U.S. Supreme Court has decided a matter very similar to the one at issue here in the case of ***Alabama v. White***." 496 U.S. 325, 327, 110 S. Ct. 2412, 2414, 110 L. Ed. 2d 301 (1990). In ***White***, a police officer stopped the respondent's vehicle, based on an anonymous telephone tip, and a consensual search of the car revealed drugs. ***Id.*** The police officer received a telephone call stating that the respondent would be leaving apartment 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with a broken right taillight lens, that she would be going to Dobey's Motel, and that she would be in possession of an ounce of cocaine in a brown attaché case. ***Id.*** The officers went to the Lynwood Terrace Apartments and saw a brown Plymouth station wagon with a broken right taillight in the parking lot in front of the 235 building. ***Id.*** The officers observed respondent leave the 235 building, carrying nothing in her hands, and enter the station wagon. ***Id.*** The officers followed the vehicle as it drove the most direct route to Dobey's Motel. ***Id.*** When the vehicle reached the Mobile Highway, on which Dobey's Motel is located, the officers requested another patrol unit pull her over. ***Id.*** An officer asked the respondent to step out of the vehicle and told her she had been stopped because she was suspected of carrying cocaine in the vehicle. ***Id.*** The officer asked for consent to search the vehicle, which respondent granted, and officers located a locked brown attaché case in the car. ***Id.*** Respondent voluntarily provided the officers the combination to the case, and inside the officers located marijuana; later, during processing at the station, officers located three milligrams of cocaine in respondent's purse. ***Id.*** The trial court denied respondent's motion to suppress, but the appellate court concluded that the officers did not have reasonable suspicion under ***Terry v. Ohio***, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), to justify the investigatory stop of the respondent's car and the marijuana and cocaine were fruits of the respondent's unconstitutional detention. ***Id.***, 496 U.S. at 328, 110 S. Ct. at 2415. "Because of the differing views in state and federal courts over whether an anonymous tip may furnish reasonable suspicion for a stop, [The United States Supreme Court] granted the State's petition for certiorari." ***Id.***

---

***State v. Cullen***, 195 S.W.3d 696 (Tex. Crim. App. 2006) (when losing party on motion to suppress evidence requests findings of fact and conclusions of law trial court is required to file them).

In upholding the stop in the underlying criminal case, the court summarized its precedent with respect to informant's tips. The Court recognized that known informants' tips may carry sufficient indicia of reliability to justify reasonable suspicion to make an investigatory stop. *Id.* (citing *Adams*, 407 U.S. at 147, 92 S. Ct. at 1924) (tip from informant known to officer and who had provided reliable information in past sufficient to justify investigatory detention). However, with respect to an anonymous tip, a "totality of the circumstances" approach is used in determining whether an informant's tip establishes probable cause. *White*, 496 U.S. at 328, 110 S. Ct. at 2415. The Court noted that an informant's veracity, reliability, and basis of knowledge are "highly relevant in determining the value of his report." *Id.* (quoting *Gates*, 462 U.S. at 230, 103 S. Ct. at 2328). The Court determined that these factors are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard. *White*, 496 U.S. at 328-29, 110 S. Ct. at 2415. The Court stated that a tip with a relatively low degree of reliability will require more information to establish the reasonable degree of suspicion than would be required if the tip were more reliable. *Id.* Thus, in applying the totality of the circumstances approach, a court considers facts known to the officers from personal observation and gives the anonymous tip the weight it deserves in light of its indicia of reliability as established through independent police work. *Id.*

The Court also analyzed the totality of the circumstances. *Id.,* 496 U.S. at 330, 110 S. Ct. at 2416-17. The Court noted that not every detail mentioned by the tipster was verified, such as the woman's name or the precise apartment from which she left. *Id* at 331. However, the Court noted that the officers corroborated that a woman left the 235 building and got into a particular vehicle that was described by the caller. *Id.* The Court stated that, given the fact that the officers proceeded to the indicated address immediately after receiving the call, and that respondent emerged not long thereafter, the record demonstrated that respondent's departure from the building was within the timeframe predicted by the caller. *Id.* As for the caller's prediction of respondent's destination, the Court concluded that it was reasonable to consider this fact corroborated even though officers stopped her just short of Dobey's Motel, because the four-mile route driven by respondent was the most direct route to Dobey's motel. *Id.* The Court further noted the anonymous tip contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of respondent that were not easily predicted. *Id.,* 496 U.S. at 332, 110 S. Ct. at 2417. The Court explained that the officers'

observation of respondent's car in the parking lot of the apartment complex was an example of an easily obtainable fact or condition that existed at the time of the tip, but the caller's prediction of respondent's actions demonstrated a special familiarity with respondent's affairs that would not be known to the general public. *Id.* The Court held that "although it is a close case" under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car. *Id.*

In the present case, the State argues that the facts here are even stronger than those in *White* and the informant has a greater degree of reliability because she and Appellant were co-workers, were together during the failed and successful narcotics transactions, and there was "real time information provided from that relationship and proximity."

We have reviewed the record and find that the trial court's findings of fact are supported by the record. *See Kelly*, 204 S.W.3d at 818. We disagree with the State that the CI's information and Alexander's individual observations provided Alexander with sufficient reasonable suspicion to stop Appellant. The CI was a first-time informant, unknown to Alexander. While the CI told Alexander that she and Appellant were co-workers, Alexander did not testify that he verified this information. Nor did Alexander testify if the CI told him where she and Appellant worked, how long they had worked together, or any other details regarding their relationship. Moreover, unlike in *White* where the officers corroborated the defendant's location and future movements, the officers in this case simply took the CI at her word that she was with Appellant and Appellant was using her phone to text message her drug supplier. Alexander never observed the CI and Appellant together. Unlike the officers in *White*, Alexander did not follow Appellant to the location, but simply waited at the county line for her to pass by while she was, according to the CI, on her way to Onalaska. The officers did not follow Appellant to see if she did, in fact, travel to a location in Onalaska. Nor did the officers verify that Appellant was in fact with the CI on the day of Appellant's arrest.

Simply put, the officers in this case corroborated only two things regarding the CI's tip: (1) Appellant was driving a blue GMC pickup; and (2) Appellant drove towards Onalaska, Texas and returned twice on November 29. Given the relatively low degree of reliability of the tip, more information was needed to establish the reasonable degree of suspicion than would be required if the tip were more reliable. *See White*, 496 U.S. at 328-29, 110 S. Ct. at 2415. The fact that Appellant was driving a blue truck is an example of an easily obtainable fact or

condition that existed at the time of the tip and does little to corroborate the CI's information. *See id.*, 496 U.S. at 332. Moreover, we cannot say that the CI was able to predict Appellant's future movements, because the officers did not actually verify that Appellant traveled to Onalaska, Texas. Instead, they merely saw her travel in the direction of Onalaska. This is distinguishable from the officers in *White*, who followed the respondent to an exact location. The Court held that *White* presented "a close case" as to whether, under the totality of the circumstances, the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car. *See id.* As discussed, the tip in the current case is as inherently unreliable as that in *White* but is corroborated by less information than that in *White*. Thus, we must conclude that, under the totality of the circumstances, the tip was not sufficiently corroborated to exhibit sufficient indicia of reliability to justify Alexander's stop of Appellant. *See id.* Therefore, we conclude that the trial court did not err in granting Appellant's motion to suppress the methamphetamine found on her person and the statements made to Alexander because both were products of a violation of Appellant's Fourth Amendment rights. *See Armstrong v. State*, 550 S.W.2d 25, 31 (Tex. Crim. App. 1976) ("fruit of the poisonous tree" doctrine serves to exclude as evidence not only the direct products but also indirect products of Fourth Amendment violations); *see also* U.S. CONST. AMEND. IV. We overrule the State's first issue.

## DISPOSITION

Having overruled the State's first issue, we need not address the State's second issue. *See* TEX. R. APP. P. 47.1. We *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered September 22, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 22, 2021**

**NO. 12-19-00377-CR**

**THE STATE OF TEXAS,**
Appellant
V.
**GEORGIA DONNELL,**
Appellee

Appeal from the 258th District Court
of Trinity County, Texas (Tr.Ct.No. 10,952)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*